**UNITED STATES of America,**
**Appellant,**

v.

**FIRST WESTERN STATE BANK OF**
**MINOT, NORTH DAKOTA, et al.,**
**Appellees.**

**No. 73–1567.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1973.

Decided Jan. 25, 1974.

Rehearing and Rehearing En Banc
Denied March 1, 1974.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for appellant.

Kermit Edward Bye, Fargo, N. D., for appellees.

Before GIBSON and ROSS, Circuit Judges, and SMITH, Senior District Judge.*

GIBSON, Circuit Judge.

The United States appeals pursuant to 18 U.S.C. § 3731 from an order of the District Court suppressing any testimonies given by defendants Hayden Thompson, Herbert Meschke, Larry Erickson, Richard Backes, Gary Williamson, and Mark Purdy before the Ward County Grand Jury, North Dakota, and "any evidence relating thereto" in this federal charge under 18 U.S.C. § 610. The District Court ordered suppression of defendants' testimonies, any evidence relating to the testimonies, and any use of the testimonies by the Government in relation to defendants' trial in federal court.[1]

■ This appeal presents only one basic issue: Did the Government establish that the evidence to be introduced in this federal prosecution against defendants had been developed from sources independent from defendants' testimonies before the state grand jury? A related issue arises on the scope of the immunity. Just because the defendants testified to certain facts before a state grand jury does not preclude the United States from presenting evidence of these same facts, if that evidence was secured or derived from sources independent from the immunized state testimony and if the immunized state testimony was not utilized to obtain leads to other incriminating evidence.

The defendants here claim that Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678

(1964), impose an almost impossible or insurmountable burden on the Government in prosecuting this case. The Government agrees with that contention, if Kastigar is interpreted in the District Court's manner. Since this case has profound implications in the enforcement of the criminal law, we think it advisable to set forth our views of the principles of Kastigar and Murphy as applied to the factual situation presented here.

■■ The United States as a sovereign is not precluded from enforcing its laws by the grant of immunity of another sovereign, in this case the state. However, as a matter of fairness to the defendants and as a constitutional guarantee against self-incrimination, the state immunized testimony cannot be used, directly or indirectly, to prosecute a federal charge. Murphy v. Waterfront Commission, 378 U.S. at 79, 84 S.Ct. 1594. Because of the far-reaching effects of an order that suppresses vital testimony essential to the prosecution of a criminal charge and thus in effect grants amnesty to these defendants from a federal prosecution, a searching analysis of the purpose and reach of immunity statutes along with an analysis of the factual aspects of this prosecution is in order.

■ At common law the public had the right to anyone's testimony, but the Constitution protects against self-incrimination. Immunity statutes, long-embodied in our jurisprudential fabric, accommodate both of these values. Immunity is generally offered as a device to secure information on criminal activity committed by those in privy with or those acting in concert with the immunized witness.[2] Often lesser witnesses

---

* The Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The latest Supreme Court case of Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), holds that use immunity satisfies constitutional requirements and that use and derivative use of immunized testimony is proscribed. Thus, no

issue is raised on the use of this state testimony itself. It cannot be used. The crucial issue, however, is whether the United States secured its leads and derived its necessary probative evidence by utilizing immunized state testimony to gain other evidence.

2. Wigmore says:
Such statutes, therefore, have for more than two centuries been the expedients re-

are induced to testify against more culpable offenders, who often are operating in the higher echelons of criminal activity. It is essentially a device to facilitate investigation of charges of corruption. Often immunity is utilized where no other legal means appears to be available or practical to ferret out facts best known to the culpable witnesses. The grant of use immunity does not clothe the witness with any aura of innocence or shield him from prosecution of the crimes inquired about, but only prohibits the use, directly or indirectly, of his testimony against him. This necessarily includes any leads that are derived from such testimony. Thus, where the same sovereign is granting the immunity and also prosecuting, that sovereign does have a heavy burden of showing that all of the essential evidence necessary for conviction was derived from independent sources. Admittedly, in that situation it may be almost impossible to separate immunized testimony and leads resulting therefrom from evidence secured from independent sources. But where the prosecuting sovereign is not the immunizing sovereign, a considerably different situation is presented.

█ The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who allegedly has committed an offense against its peace and dignity. When its own evidence and investigation discloses acts of criminal activity, an undeniable right to prosecute exits. This right cannot be controlled, thwarted, or diminished by another sovereign granting immunity from prosecution of a kindred offense. Fair play and constitutional guarantees demand, however, that the prosecuting sovereign not use, directly or indirectly, the immunized testimony or any fruits from it. Kastigar v. United States, *supra*; Murphy v. Waterfront Commission, *supra*. If the prosecuting sovereign has made its independent investigation and can show nonuse of the immunized testimony, either by lack of access to the immunized testimony or direct statements made in good faith that it did not use the immunized testimony, it should have a clear right to proceed with its own prosecution. However, under *Kastigar* and *Murphy* the prosecuting sovereign does have the burden of showing an independent source for its evidence.

█ Under the facts of this case, it would appear that the United States gathered a considerable amount of its evidence starting May 12, 1969, some five months prior to the convening of the state grand jury. During this interval, two federal grand jury sessions were held. Clearly and obviously, any evidence obtained during this period, even in conjunction with any state-federal investigation, antedated the state grant of immunity and should be available for use by the federal government. The Federal Bureau of Investigation reports prior to this date and the minutes of the two prior federal grand jury sessions irrefragably should be considered as independent sources. After the date of the state grant of immunity, closer scrutiny is required to ascertain if the immunized testimony was received or made available to the federal government or was used to obtain other incriminating evidence. Even if some questionable evidence was obtained, that should not preclude the United States from prosecuting if it can do so on the independent and untainted evidence it has secured. Any tainted evidence, of course, would be inadmissible and must be suppressed during the trial. We feel

sorted to for the investigation of many offenses, chiefly those whose proof and punishment were otherwise impracticable because of the implication in the offense itself of all who could bear useful testimony.

8 Wigmore, Evidence § 2281 at 492 (McNaughton rev. 1961).

For a general discussion of the history and purposes of immunity in regards to grants of immunity by the United States, *see* Comment, The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope, 72 Yale L.J. 1568 (1963).

here that the Government should be permitted to make its case, since it claims, in good faith, independent and untainted sources for its evidence and further asserts nonaccess. The FBI reports and federal grand jury minutes should reveal two independent sources of the Government's evidence. This might be one of the many cases in which only a complete record can ultimately resolve all questions relating to the source of evidence.

With the above principles in mind, we examine the factual background of this appeal. A federal grand jury was convened in North Dakota commencing September 23, 1969, to investigate, *inter alia,* possible contributions by First Western State Bank of Minot, North Dakota (hereinafter Bank), some of its officers, and others, to elections of presidential or vice-presidential electors and members of Congress.[3] Defendants did not testify before the federal grand jury, who returned a true bill on July 31, 1970, charging the Bank with five violations of 18 U.S.C. § 610 and the six individual defendants with willfully conspiring to cause the Bank to make contributions to certain federal elections.

Subsequent to the federal grand jury, the Ward County Grand Jury, North Dakota, was called into session October 14, 1969, to investigate the same alleged activity by defendants and others in relation to violations of the North Dakota Corrupt Practices Act, N.D.Cent.Code § 16–20–01 et seq. (1960). The state grand jury met from October 14, 1969, through December 8, 1969, and all invidiual defendants testified. Backes testified on October 23rd, Meschke on October 24th and 27th, Erickson on October 29th, Williamson on October 30th and December 3rd, Purdy on December 1st, and Thompson from December 1st through December 3rd. On December 8, 1969, the state grand jury charged each individual defendant with violating N. D.Cent.Code § 16–20–08 and § 16–20–09 for aiding, abetting, advising, or con-

senting in making unlawful political contributions. On March 9, 1970, a North Dakota state district court quashed defendants' indictment, since N.D.Cent. Code § 16–20–10 granted transactional immunity to defendants on their testimonies before the state grand jury concerning the charged violations. Defendants, however, still faced the above-described federal charges.

In the proceedings below on these federal charges, the defendants moved to quash the indictment because of purported immunity relating to defendants' testimonies before the state grand jury. Although this motion was originally denied on February 3, 1971, by the late Judge Register, defendants again brought the same motion on August 13, 1971. After oral arguments, the District Court on January 24, 1973, ordered a pretrial evidentiary hearing in order to allow the Government "an opportunity to meet the burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources" from the testimonies given by defendants before the state grand jury. The hearing was held from May 8–10, 1973. The District Court in its order concerning this evidentiary hearing summarized the Government's evidence:

The hearing was held on schedule. The Government witnesses included Richard B. Thomas, Ward County State's Attorney, and Paul M. Sand, First Assistant Attorney General for the State of North Dakota, officials that conducted the State Grand Jury proceedings; Richard Peterson, Special Agent of the Federal Bureau of Investigation; H. Clifford Miller, Special Agent of the Federal Bureau of Investigation; Harold O. Bullis, United States Attorney, District of North Dakota; Eugene K. Anthony, Assistant United States Attorney, District of North Dakota; John Clark, formerly Trial Attorney, Government Operations Section, Criminal

---

3. The federal grand jury met and was in session during the following times: September 23–26, 1969; October 7–9, 1969; December 1–5, 1969; February 3–4, 1970; and July 28–31, 1970.

Division, Office of the Attorney General of the United States; and Gary Annear, Assistant United States Attorney, District of North Dakota. By stipulation the deposition of Lynn E. Crooks, Assistant United States Attorney, District of North Dakota, was taken and submitted subsequent to the hearing.

In addition to the testimony of the witnesses the Government submitted, for *in camera* inspection, transcripts of testimony given by witnesses appearing before the Federal Grand Jury, together with Federal Bureau of Investigation reports. All of the material thus submitted related to the affairs of the First Western State Bank, Minot, North Dakota.[4]

The Government, in part, contended before the District Court, in its brief on appeal, and during oral argument on appeal, that it had no access to the state grand jury transcripts of defendants' testimonies. Defendants have not disputed this assertion, nor have they offered any contradictory evidence. Defendants have argued that the joint state and federal investigation of defendants' activities and the constant communication between the state and federal prosecutors warrant the inference that the federal prosecutors and other officials must have had knowledge of defendants' testimonies before the grand jury that provided at least investigatory leads for evidence on the federal charges. Defendants introduced records of the telephone company showing numerous calls between the state and federal prosecution offices and extensively cross-examined state and federal officials in an attempt to demonstrate that the federal prosecutors had actual knowledge of defendants' testimonies before the grand jury. All Government witnesses denied that federal prosecutors knew any of the testimony or

had access to the transcripts. Government witnesses testified that any conversations between the state and federal officials concerned the exchange of documents and the scheduling of witnesses. Ward County State Attorney Richard B. Thomas testified that he did inform federal attorneys that defendants' testimonies before the state grand jury provided nothing productive.

The District Court found that the number of telephone calls Ward County State Attorney Thomas "had with the United States Attorney's office, the Federal Bureau of Investigation and other investigatory or interested federal agencies leads to the inescapable conclusion that information was conveyed to representatives of the United States Government that proscribe its use in a Federal criminal prosecution in United States Court * * *." The District Court held that the Government failed to meet its burden of proving legitimate, independent sources for its evidence under Murphy v. Waterfront Commission and Kastigar v. United States and suppressed defendants' testimonies before the state grand jury, any evidence relating to the testimonies, and any use of the testimonies in relation to defendants' trial on the federal charges.

The scope of the trial court's order is not exactly clear. Obviously, the defendants' state testimonies cannot be used against them. But what is meant by "any evidence relating thereto"? Does this mean independent evidence of the offense testified to cannot be used, thus extending transactional immunity to the offenses testified to, or does it merely impose a ban on evidence obtained as a result of the defendants' immunized testimonies? We assume the latter.

■ In United States v. McDaniel, 482 F.2d 305 (8th Cir. 1973) (hereinafter *McDaniel II*),[5] this court properly in-

---

4. The District Court also had the transcripts of defendants' testimonies before the state grand jury, since defendants filed these transcripts on August 13, 1971, with the motion to quash the indictment.

5. This opinion concerned a review of an earlier remand by this court in United States v. McDaniel, 449 F.2d 832 (8th Cir. 1971), cert. denied, 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972).

terpreted *Kastigar* in holding that the Fifth Amendment only requires use immunity. Defendants, therefore, can only complain if their testimonies before the state grand jury were *used* by the federal government, the prosecuting sovereign, in obtaining evidence against them for their trial under federal charges.

 The federal government, however, can use the same evidence testified to by defendants before the grand jury if it can demonstrate that the evidence to be used against defendants came from a legitimate source wholly independent of the compelled testimonies. The prosecuting government's burden of proving a legitimate, wholly independent source for the compelled testimony is explained in *McDaniel II* by quoting *Kastigar*:

> " 'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." [quoting Murphy v. Waterfront Commission, 378 U.S. 52, 79, n. 18, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)].
>
> This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.
>
> \* \* \* \* \* \*
>
> . . . One . . . need only show that he testified under a grant of immunity in order to shift to the government the *heavy burden* of proving that all of the evidence it proposes to use was derived from legitimate, independent sources."

*McDaniel II, supra* at 310–311, *quoting* Kastigar v. United States, *supra*, at 460, 461–462, 92 S.Ct. 1653.

Defendants at the evidentiary hearing established that they had testified before the state grand jury concerning activity that is directly concerned with the federal charges in this case. Defendants pursuant to N.D.Cent.Code § 16–20–10 were eventually granted transactional immunity (as a matter of state law policy) against any possible *state* charges relating to their testimonies. The United States Attorney Bullis stipulated at the commencement of the evidentiary hearing that defendants appeared before the state grand jury. Before the evidentiary hearing, defendants filed with the District Court several documents including the state grand jury transcripts of defendants' testimonies.[6] We think that the state grand jury transcripts clearly demonstrate that defendants' testimonies were directly concerned with the federal charges of this case, and the federal government properly was required to demonstrate at the evidentiary hearing the independent sources for its evidence to be introduced against defendants.

 We think, however, that the District Court's finding that "not all of the evidence the United States Government proposes to use was derived from legitimate, independent sources and that some of the evidence is a direct result of communications between Federal and State authorities" as a basis for its suppression ruling is clearly erroneous as a matter of law. There is no indication in the District Court's memorandum order that the court attempted to ascertain whether the evidence to be presented came from independent sources or only from the defendants' testimonies before the state grand jury. Although the Government introduced FBI reports con-

---

6. Filed with this case on appeal are the transcripts of the state grand jury testimonies of defendants, the transcript of the evidentiary hearing conducted by the District Court, and certain exhibits admitted during the evidentiary hearing. The FBI reports and the federal grand jury transcripts admitted during the evidentiary hearing were not filed on appeal.

cerning investigation of defendants' alleged political contributions, the District Court's order does not indicate that it had reviewed those reports to determine whether they could be a sufficient, wholly independent source from the compelled testimonies. The failure to review the Government's contended independent sources was error and a misinterpretation of the law announced in *Kastigar* and *McDaniel II*.

■ We further think that the Government has discharged its burden of proving independent sources *during the pretrial evidentiary hearing* by testifying that there was no access by federal authorities to the state grand jury transcripts, by testifying that federal authorities had no knowledge of the compelled testimonies, and by introducing the FBI reports and federal grand jury transcripts as possible independent sources to the District Court for its inspection. This testimony and the introduction of the FBI reports should suffice to carry the Government's burden of proof for the pretrial evidentiary hearing. We therefore reverse the District Court's holding that any evidence relating to the subject matter of defendants' testimonies before the state grand jury *must be suppressed*.

■ We support *McDaniel II's* statement that the Government's burden of proving independent sources should "under ordinary circumstances" be shouldered during a pretrial evidentiary hearing. Where substantial evidence is proffered showing a joint investigation, as in this case, a pretrial hearing would be advisable. Not every case, however, would call for a further fragmentation of the trial process by having a full-scale suppression hearing prior to trial. The ascertaining of independent sources can often be better considered during the trial, since all the evidence is placed on the record or offered for introduction at the trial. To some extent, this is a matter of degree. For example, isolated questions concerning suppression of certain evidence should not call for a full-scale suppression hearing of all the evidence that is to be offered by the Government. In general, where feasible and compatible with fairness to the defendant, the trial process should not be further fragmented if at all possible.

The resolution of the Government's burden of proof in *McDaniel II* during a pretrial evidentiary hearing was eased by an admission of the United States Attorney that he had read the state grand jury transcript. *McDaniel II* therefore concluded the testimony read by the United States Attorney "could not be wholly obliterated from the prosecutor's mind in his preparation and trial of the case." *McDaniel II, supra* at 312. In this light the *McDaniel II* court held that the Government failed to prove that the United States Attorney "did not use [McDaniel's testimony] in some significant way short of introducing tainted evidence." *McDaniel II, supra* at 311. Since the United States Attorney had read the state grand jury transcript in *McDaniel II* and since the reading of a transcript makes proof of independent sources much more difficult for the Government, resolution of this burden of proof issue *during a pretrial evidentiary hearing* was considerably facilitated.

In this case, the federal officials have testified that they had no access to or knowledge of the state grand jury transcripts. That testimony, the lack of contradictory evidence by the defendants showing actual knowledge or access to the state grand jury transcripts by federal authorities, and the introduction of the FBI reports and the state and federal grand jury minutes should have discharged the Government's burden of proving independent sources during the *pretrial hearing*.

After reviewing the FBI reports and the state and federal grand jury transcripts, the District Court may indeed find that proffered evidence by the Government during the forthcoming trial has only been derived from defendants' compelled testimonies. If that occurs,

suppression of that evidence is demanded.

The District Court's order of suppression is reversed and the case is remanded for further proceedings consistent with this opinion.