**UNITED STATES of America, Appellee,**

v.

**John BARKER, Appellant.**

**No. 76–1240.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1976.

Decided Oct. 6, 1976.

John H. Altergott, Jr. (argued), James W. McManus, Kansas City, Mo., on brief, for appellant.

Kenneth Josephson, Asst. U. S. Atty. (argued), Bert C. Hurn, U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and WEBSTER, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

An indictment filed in the Western District of Missouri on February 12, 1975, charged appellant John Barker, together with Raymond Dale Neal, Richard Fullerton, and James D. Kinnaird, Jr., with engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)[1] and 2.[2] Barker was

---

1. § 922. *Unlawful acts.*

   (a) It shall be unlawful—

     (1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce; . . .

2. § .2. *Principals.*

   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

tried separately[3] to a jury on February 5–6, 1976. He was convicted and sentenced to five years imprisonment. This is a direct appeal from that conviction.

We briefly summarize at the outset the evidence adduced at trial. The Government's case was predicated from start to finish on the notion that Barker aided and abetted Neal, Fullerton, and Kinnaird in the illegal firearms business charged.[4] The case consisted primarily of testimony of four special agents of the Bureau of Alcohol, Tobacco & Firearms, United States Treasury Department, who had acted as undercover agents in the investigation which led to the instant prosecution. According to the testimony, on the evening of October 8, 1974, at a certain garage in Independence, Missouri, a number of the witnesses had purchased approximately sixteen firearms from Neal, Fullerton, and Kinnaird for approximately $900. Similarly, on the evening of October 16, 1974, at the same garage, they had purchased approximately twenty-two firearms from Neal and Kinnaird for approximately $1600. While and immediately after the second of these sales was being conducted, a number of the witnesses met with Fullerton and Barker at a bar about one mile from the garage. A conversation ensued in which Barker, according to the testimony, made several incriminating statements tending to link him with the sales at the garage. These alleged statements were that he (Barker) had been in on burglaries of the guns being sold, that he (Barker) was satisfied with the price paid for the guns, that he (Barker) was in Independence to sell some guns, and that "these are my guns."

The approximately thirty-eight firearms which the witnesses had purchased on the two evenings were placed in evidence over objection, and a stipulation was read to the jury to the effect that Barker had no license to sell firearms. A second stipulation, which was also read to the jury, recit-ed that certain persons would, if called, testify that their homes had been burglarized and firearms stolen, that the burglaries and thefts had been reported to law enforcement officials, and that they could identify firearms bearing specific serial numbers as theirs, but that they could not identify the burglars.

There was no evidence that Barker personally sold any firearms or that he received any money directly from Government agents. The defense offered no evidence.

Among the alleged errors raised on appeal are the following:

I. The trial court erred in denying Barker's motions to dismiss the indictment and for judgment of acquittal in that, by reason of a confession by Barker to state authorities, he was accorded complete immunity from any prosecution, state or federal.

II. The trial court erred in denying Barker's motion for judgment of acquittal in that the jury was given no evidence on an essential element of the crime charged.

We agree with the district court that Barker was never accorded immunity from federal prosecution and affirm that court's denial of the motion to dismiss the indictment. In essence, however, we agree with the second contention listed above. We accordingly reverse the judgment of conviction on that ground and remand this case to the district court. We do not reach other issues raised.

I.

A threshold issue concerns whether the indictment should have been dismissed because, as alleged by Barker, he was accorded immunity from this prosecution. On February 17, 1975, five days *after* the federal indictment was returned, Barker gave an extensive in-custody statement[5] to Jas-

---

3. Neal, Fullerton, and Kinnaird entered guilty pleas and are not parties to this appeal.

4. Government counsel emphasized this point in both opening and closing arguments to the jury.

5. The statement, twenty-seven pages in length, is in question-and-answer form. It was originally recorded on tape and was subsequently transcribed.

per County, Missouri, law enforcement officials. This statement, inculpatory in nature, was given following full *Miranda* warnings and a written waiver of constitutional rights. It was concerned in part with matters highly pertinent to the instant prosecution. The text of the statement reveals that the Missouri officials had represented that Barker would not be prosecuted and that the statement would be kept confidential.[6] Barker was not prosecuted by the State of Missouri on any charges concerning matters contained in the statement. However, the representation of confidentiality was not kept, as a copy of the statement was received by the United States Attorney's office which prosecuted this case.[7]

On the basis of the facts just recited, Barker moved to dismiss the indictment. The district court, after conducting a pretrial evidentiary hearing, denied the motion on the understanding that the Government would not use the statement in its case in chief and on the further understanding that, in the event Barker testified at trial, the trial judge could rule at that time whether the statement could be used for impeachment purposes. Barker did not testify at trial, and the statement was not used at trial for any purpose.

Barker's contention, bottomed on the self-incrimination clause of the Fifth Amendment, is that the Missouri officials granted him immunity from prosecution for any crimes mentioned in the statement and that this fact, at least when coupled with the additional fact that the Government procured a copy of the statement, accorded him immunity from federal prosecution as well. This contention is plainly mistaken.

There are, of course, certain Fifth Amendment protections, discussed *infra,* which circumscribe a federal prosecution after a state has granted immunity. The initial difficulty in this case is that Barker was not, strictly speaking, granted immunity by the Missouri officials in accordance with Missouri statutes. Rather than being *compelled* to testify against himself by such an immunity grant, Barker *agreed* to testify against himself in exchange for a representation of nonprosecution. We bypass, however, whatever complications may arise by virtue of this difference. We assume, without deciding, that a defendant in the latter position is entitled fully to the protections afforded a defendant in the former position. We thus assume, without deciding, that Barker was, in essence, granted immunity from state prosecution in such a way as to invoke the principles discussed *infra.* Those principles do not warrant the dismissal of his indictment.

■ It is clear beyond doubt that one sovereign's grant of immunity is not *ipso facto* binding on another sovereign. As we stated in *United States v. First Western State Bank,* 491 F.2d 780, 783 (8th Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974):

---

6. The representation of confidentiality was subject to the exception that the statement would be available to the county prosecutor, who was not present when the statement was taken.

7. The record does not suggest, and defendant does not allege, any misconduct by either federal or state officials in the delivery of this statement. At a pretrial hearing, the Assistant United States Attorney explained:

> [A] highway patrolman of Jasper County . . . informed one of the federal agents that such a statement existed. And I asked one of the agents of the Alcohol, Firearms and Tobacco to give me a copy of the statement if they could because I would like to read it. At that time I knew nothing about any promises that existed in the statement. I knew nothing about the statement. The Alcohol, Firearms and Tobacco agent obtained that statement from the Jasper County Sheriff. He just asked him for it, drove down and picked it up.

Defense counsel stated he did not dispute this testimony.

As to the state officials, Barker testified at the pretrial hearing:

> [T]hey [the Missouri officials] informed me that the information had leaked out through no fault of their own. I think it had come out of the Joplin Police Department some way.

The sovereign not offering immunity has the undeniable right to protect the integrity of its law enforcement prerogatives by prosecuting anyone who allegedly has committed an offense against its peace and dignity. When its own evidence and investigation discloses acts of criminal activity, an undeniable right to prosecute exists. This right cannot be controlled, thwarted, or diminished by another sovereign granting immunity from prosecution of a kindred offense.

Missouri officials could not and did not give Barker immunity from federal prosecution.

█ It is also clear, however, that once a state does compel a defendant's testimony through an immunity grant, the federal Government cannot take advantage of that testimony in order to obtain a conviction. This principle was set forth in *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The Supreme Court held:

> [A] state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits.

378 U.S. at 79, 84 S.Ct. at 1609. Moreover, once a defendant demonstrates that he has testified under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence. *Id.* n. 18. *Accord, Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

In *United States v. McDaniel,* 449 F.2d 832 (8th Cir.1971), *cert. denied,* 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972) *(McDaniel I), appeal after remand,* 482 F.2d 305 (8th Cir.1973) *(McDaniel II),* we applied the principles set forth in *Murphy* to a situation in which the federal Government had sought and obtained access to testimony compelled by a state grant of immunity. *McDaniel I,* the decision principally relied upon by Barker, might be read as setting forth a broad rule that, once the Government has sought and obtained access to such testimony, a federal indictment on charges related to the testimony must be dismissed. Of critical importance, however, is the fact that *McDaniel I* was decided prior to the Supreme Court's *Kastigar* decision, *supra,* which held that the Fifth Amendment requires only use and derivative use immunity, not transactional immunity. Since *McDaniel I* rested in large part on a view that transactional immunity was required, the *Kastigar* decision necessitated a re-examination of the *McDaniel I* holding. That re-examination came in *McDaniel II, supra,* wherein we necessarily held that the prosecution may go forward if the Government establishes that no use or derivative use of the testimony is made. In *McDaniel II,* we held that the Government had not sustained this burden. In *United States v. First Western State Bank, supra,* we reiterated the principles of *McDaniel II* and held that, at least insofar as a pretrial evidentiary hearing was concerned, the Government had sustained this burden.

█ The salient fact with respect to the indictment, then, is that it was returned five days prior to Barker's statement to the Missouri officials. It was thus perforce based on evidence independent of the statement, and the district court properly denied the motion to dismiss it. *See United States v. First Western State Bank, supra* at 783.

Ordinarily, we would be faced with the additional question whether any fruits of the statement were used at trial.[8] However, we have severe doubt whether this issue was properly raised in the district court, as no motion to suppress on this

---

8. The statement itself was not used at trial.

ground was filed, and it is also unclear whether this issue is raised on appeal. We are certain that no plain error occurred.[9] In any event, our reversal of this case on other grounds renders further discussion of this issue premature at best, since there is no assurance that evidence which might be adduced at a new trial, if there is one, will coincide with adduced at the original trial.

■ In sum, we do not hold that the *Murphy* line of cases either does or does not apply where no formal immunity is granted by state officials but where a representation of nonprosecution is made in exchange for incriminating testimony. We do hold that, if this line of cases does apply, Barker was not entitled to dismissal of his indictment. If Barker is retried, he is free, on proper filing of a motion to suppress, to argue that the *Murphy* line of cases does apply and that, if it does, tainted evidence should be suppressed.[10]

## II.

As already noted, the Government's case against Barker was based on the notion that Barker aided and abetted Neal, Fullerton, and Kinnaird in the illegal firearms business charged. Barker contends that the jury was given no evidence from which it could conclude that Neal, Fullerton, and Kinnaird were unlicensed to deal in firearms. The contention is well taken.

■ At trial the Government's case in chief included a stipulation that Barker himself had no license to deal in firearms. However, there was no direct evidence that the persons whom Barker allegedly aided and abetted were similarly unlicensed. After both the Government and the defense had rested, this apparent oversight surfaced, at which time the trial court permitted the Government to reopen its case [11] and purportedly to introduce into evidence certain certificates to the effect that Neal, Fullerton, and Kinnaird were unlicensed. The difficulty is that these certificates were never in any manner placed before the jury.[12]

■ It is fundamental that there can be no conviction for aiding and abetting someone to do an innocent act. It is incumbent upon the Government to prove that the persons allegedly aided and abetted did commit the substantive offense. *Shuttlesworth v. Birmingham,* 373 U.S. 262, 265, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); *United States v. Barfield,* 447 F.2d 85, 89 (5th Cir.1971). Barker could not, accordingly, be

9. Every indication in both the trial transcript and the transcript of a post-trial evidentiary hearing is that tainted evidence was not used at the trial below.

   *McDaniel II, supra* at 311–12, placed an extraordinary burden on the Government to establish independent sources when it has obtained access to the compelled testimony. It did so, however, in a context in which such access had been obtained at a very early stage in the investigatory process. Whether the balance should be struck differently when the access is afforded substantially later in the investigatory process is a question we leave open.

10. We are also aware that the fact that the representation of confidentiality was not kept might vitiate the voluntariness of the statement. *Cf. Mobley ex rel. Ross v. Meek,* 531 F.2d 924 (8th Cir.1976) (plea bargain context); *Hunter v. Swenson,* 504 F.2d 1104 (8th Cir. 1974), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1410, 43 L.Ed.2d 662 (1975) (dicta). If this is so, suppression of fruits of the statement would similarly ·be required, *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), but dismissal of the indictment would again be unwarranted. If Barker is retried, he is free, on proper filing of a motion to suppress, to argue that the statement was involuntary and that, if it was, tainted evidence should be suppressed.

11. Barker alleges that the trial court erred in allowing the Government to reopen its case. That decision was within the discretion of the trial court. *United States v. Webb,* 533 F.2d 391, 395 (8th Cir.1976). There was no abuse of discretion here.

12. The certificates were purportedly received in evidence in chambers and without the presence of the jury. There is nothing in the record to indicate that they were in any manner called to the attention of, or that their "reception" was in any manner made known to, the jury. Government counsel admitted at oral argument that it was the trial court's normal practice not to send exhibits to the jury. Nor did Government counsel in either its brief or in argument contest Barker's statement that the certificates were not called to the attention of the jury.

convicted of aiding and abetting an illegal firearms business unless and until it was proved that the firearms business was illegal. This necessarily entailed a proof that the persons who conducted the business had no license to do so.

■ The burden of proof in establishing that Neal, Fullerton, and Kinnaird were unlicensed, like the burden of proof in establishing each of the other essential elements of the crime charged, necessarily rested with the Government. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Moreover, the certificates purportedly introduced in evidence could not assist the Government in shouldering this burden, since they were not available to the jury. As stated by the Supreme Court, "[t]he requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Turner v. Louisiana,* 379 U.S. 466, 472, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965). It is transparently obvious that a verdict cannot be based on "evidence" which the jury does not see or hear. Barker is quite correct in contending that there was no direct evidence to support the jury's verdict on this essential element.

We recognize, of course, that the absence of direct evidence is not necessarily fatal to the Government's case. To the contrary,

we have upheld numerous convictions based primarily, or even exclusively, on circumstantial evidence. A thorough review of the trial transcript, viewed, as it must be, in the light most favorable to the Government, however, reveals only and at most that Neal, Fullerton, and Kinnaird were conducting a rather clandestine firearms business at a particular garage. While this fact may well raise some suspicion that those individuals were unlicensed, it is well settled that a jury is not justified in convicting a defendant on the basis of mere suspicion, speculation or conjecture. *E. g., United States v. Diggs,* 527 F.2d 509, 513 (8th Cir.1975).

■ It will simply not do to suggest, as the Government does, that the trial judge did see the certificates and that he knew that Neal, Fullerton, and Kinnaird had pled guilty to charges of dealing in firearms without a license. However conclusive these facts may have appeared to the district court, and however conclusive they may appear to us, trial by jury means precisely that, and the district court may not in a jury trial, in determining the sufficiency of the evidence to support a conviction, consider matters which are not properly before the jury.[13]

■ We accordingly have no choice other than holding that there was insufficient evidence on which a jury could convict Barker of the crime charged.[14]

---

**13.** Our holding in *United States v. Goings,* 517 F.2d 891 (8th Cir.1975), is not to the contrary. In that case, the defendant had admitted a particular element of the crime charged and there was, consequently, competent evidence before the jury. We held that an instruction withdrawing this issue from the jury was not plain error. Here, the deficiency lay in the evidence itself, not the instructions (but see note 14, *infra*), and the sufficiency of the evidence was properly raised by post-trial motion.

**14.** The difficulties caused by the trial court's failure to make the certificates available to the jury were exacerbated by the essential elements instruction given. That instruction reads in full:

"To find the defendant guilty of the offense charged you must find each of the following three essential elements proved beyond a reasonable doubt:

"*First:* That the defendant was at one or more times from on or about September 6, 1974, to on or about October 16, 1974, engaged in dealing in firearms or aided and abetted the dealing in firearms.

"*Second:* That the defendant was not licensed under the provisions of Chapter 44, Title 18, United States Code, to engage in the dealing in firearms.

"*Third:* That the defendant did such act wilfully, knowingly, and unlawfully.

"Unless you find that all three of these essential elements have been proved beyond a reasonable doubt, you shall find the defendant not guilty."

This instruction allowed the jury to return a verdict, as it did, that Barker was guilty of aiding and abetting Neal, Fullerton, and Kinnaird, without finding that Neal, Fullerton, and Kinnaird were unlicensed. As explained in the text above, an aiding and abetting conviction

We find it unnecessary and inappropriate to address other issues raised.

The order denying Barker's motion to dismiss the indictment is affirmed. The judgment of conviction is reversed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

could not be obtained unless the jury found that the persons allegedly aided and abetted were unlicensed. The instruction nevertheless allowed the jury to find Barker guilty of aiding and abetting on a finding that only *he* was unlicensed. The instruction was not objected to on this ground. In view of our reversal, we need not decide whether the instruction is plainly erroneous under Rule 52(b), Fed.R. Crim.P. It *is* erroneous, and, in the event Barker is retried, it should be corrected.