UNITED STATES of America,
Plaintiff–Appellee,

v.

Gene CAMP, Victor Camp, Todd Oatman,
Defendants–Appellants.

Nos. 94–30292, 94–30303 and 94–30304.

United States Court of Appeals,
Ninth Circuit.

Submitted * June 6, 1995.

Decided June 29, 1995.

Michael Donahoe, Asst. Federal Defender, Gregory A. Jackson, Jackson & Rice, Wendy Holton, Helena, MT, for defendants-appellants.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee.

Before: BROWNING, WRIGHT and T.G. NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We must decide whether a federal court may at sentencing consider information revealed by a defendant in exchange for state transactional immunity. We hold that, in the absence of an independent and legitimate source for that information, a federal district court may not.**

I

In an unrelated state matter, the Missoula County Attorney's office granted Gene Camp and Victor Camp ("the Camps") transactional immunity for offenses relating to the death of Peter Solberg. Pursuant to the immunity agreement, the Camps revealed their conduct

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4. The parties agree.

** Appellants raised several other arguments regarding their convictions and sentences. A separate unpublished memorandum disposition addresses these arguments.

and other information relating to Solberg's death.

In the case before us, the presentence report recommended the immunized "prior similar adult criminal conduct" as a factor warranting upward departure. Defense counsel objected to using the immunized information as a basis for upward departure. The district court overruled the objection and departed upward in the Camps' criminal history categories. The Camps appeal. We vacate the sentences and remand.

## II

■ We review de novo the legality of a sentence. *United States v. Pomazi*, 851 F.2d 244, 247 (9th Cir.1988). We first treat whether state transactional immunity can be effective as federal use immunity. We then address whether the Camps may enjoy federal use immunity even though they incriminated themselves pursuant to an immunity agreement and not through compelled testimony.

### A. State Transactional Immunity & Federal Use Immunity

■ The district court concluded that, although a state grant of *use* immunity could bind a federal court, it was not so bound because the Montana authorities had granted the Camps *transactional* immunity.[1] We disagree.

In *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 1608–09, 12 L.Ed.2d 678 (1964), the Court recognized that the Fifth Amendment privilege protects a state witness against incrimination under federal law. Accordingly, it held that "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used *in any manner* by federal officials in connection with a criminal prosecution against him." [2]  *Id.* at 79, 84 S.Ct. at 1609 (emphasis added). *Compare Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (use immunity suffices constitutionally to compel testimony over a claim of Fifth Amendment privilege).

■ The Court provided that, once the defendant demonstrates that he has testified under a state grant of immunity, the federal authorities bear the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence. *Murphy,* 378 U.S. at 79 n. 18, 84 S.Ct. at 1609–10 n. 18. Therefore, state transactional immunity can be effective as federal use immunity.[3]

### B. Compelled Testimony Not Required

■ The district court concluded that, because the Camps revealed the information pursuant to an immunity agreement and not through compelled testimony, they were not entitled to use immunity. We disagree.

We find that self-incrimination pursuant to an immunity agreement sufficiently raises constitutional concerns to trigger the *Murphy* exclusionary rule. No language in *Murphy* prohibits such an application of its rule. Consequently, although *Murphy* involved compelled testimony, we believe that its exclusionary rule reaches immunity agreements as well.

Until today, only the Fifth and Seventh Circuits have treated this question of wheth-

1. Under transactional immunity, a witness may not be prosecuted for the offense to which the immunity relates. 3 Wharton's Criminal Procedure § 363 (13th ed. 1989). Under use immunity, although the witness may be prosecuted for the offense to which the compelled testimony relates, the witness's testimony may not be used against the witness. *Id.*

2. We understand this to prohibit the use of such evidence at sentencing.

3. *Murphy* does not distinguish between transactional immunity and use immunity, but it has been understood by federal courts to hold that state transactional immunity translates into federal use immunity. *See, e.g., United States v. DeSalvo*, 26 F.3d 1216, 1221 (2d Cir.1994) ("a state grant of transactional immunity [amounts to] only use immunity in a federal court."); *United States v. Barker*, 542 F.2d 479, 483 (8th Cir. 1976); *United States v. Hampton*, 775 F.2d 1479, 1484–85 (11th Cir.1985); *United States v. Biaggi*, 675 F.Supp. 790, 806 n. 5 (S.D.N.Y.1987) ("*Murphy–Kastigar* principle [is] that state transactional immunity grants federal use immunity").

er *Murphy* may be applied to information revealed pursuant to an agreement with a state. They take a different view.[4] The Fifth Circuit, in *United States v. Roberson*, 872 F.2d 597, 611–12 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989), contended that *Murphy* is distinguishable from the type of case at bar:

> In *Murphy*, the defendant was stuck between the proverbial rock and a hard place: He could testify, and incriminate himself, or he could invoke the fifth amendment, and risk contempt charges. As a result, the defendant had no real choice but to testify, a result which would offend fifth amendment principles....
>
> To the contrary, in this case Roberson was not compelled to do anything. He bargained with the state, convincing it to forego [prosecution] in exchange for his cooperation.

*Id.* at 611. The Seventh Circuit adopted the *Roberson* rationale in *United States v. Eliason*, 3 F.3d 1149, 1152–53 (7th Cir.1993).

The Fifth and Seventh Circuits' opinions fail, however, to explain fully how their constitutional distinction can be drawn on a factual distinction between compelled testimony and information received through an immunity agreement. We believe that a credible constitutional distinction cannot be so drawn. Our reading of *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963), compels us to apply the *Murphy* rule to immunity agreements as the privilege against self-incrimination is implicated in those contexts.

In *Shotwell*, 371 U.S. at 347, 83 S.Ct. at 453, the Court noted that, under the Fifth Amendment, evidence of guilt induced by a government promise of immunity is coerced evidence and may not be used against the accused. It recognized that an inculpatory statement by a person suspected of a crime, to whom a prosecutor has made a promise of immunity in return for a statement, is a product of inducement and not an act of free will. *Id.* at 348, 83 S.Ct. at 453–54 (citing *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)).

Here, the Montana authorities induced the Camps to incriminate themselves with an offer of transactional immunity. Under *Shotwell*, this triggered their Fifth Amendment protections. And thus, under *Murphy*, this state grant of transactional immunity precluded the federal government from using this information against the Camps.

The *Murphy* Court declared that this "exclusionary rule, while permitting the states to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity." 378 U.S. at 79, 84 S.Ct. at 1610. Likewise, we leave the Camps and the federal government in such a position.[5]

### III

Here, the Camps incriminated themselves after state authorities granted them transactional immunity. The federal government had the burden to show that there was an independent and legitimate source of the evidence. It never attempted to meet this burden. We vacate the Camps' sentences and remand for findings (a *Kastigar* hearing) as to whether there is an independent and legitimate source of the evidence. If the government cannot establish such a source, then the district court should resentence the Camps without reference to the information they disclosed relating to Solberg's death.[6]

**SENTENCES VACATED & REMANDED.**

---

**4.** In *Barker*, 542 F.2d at 482, the Eighth Circuit assumed arguendo that a defendant who incriminates himself under a transactional immunity agreement is entitled to the same protection as one who incriminates himself through compelled testimony.

**5.** Further, our decision encourages state transactional immunity agreements, and in that respect, we avoid federal entanglement with state affairs.

**6.** We express no opinion on the propriety of an upward departure if the Solberg information is not available for use in the resentencing.