UNITED STATES of America, Appellee,

v.

Gordon S. BUTTORFF and Charles A. Dodge, Appellants.

Nos. 77–1639 and 77–1667.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1977.

Decided Feb. 28, 1978.

Gordon S. Buttorff, pro se.

Joseph W. Weigel, Milwaukee, Wis., argued and filed brief for Charles Dodge.

Keith Van Doren, Asst. U. S. Atty., Sioux City, Iowa (argued), and James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, on brief, for appellee.

Before ROSS, STEPHENSON, and WEBSTER,* Circuit Judges.

ROSS, Circuit Judge.

Gordon S. Buttorff and Charles A. Dodge appeal from their convictions, after a joint jury trial, on various counts of aiding and abetting several persons (the principals) in the filing of false or fraudulent income tax

* Judge Webster participated in the hearing of this case but did not participate in the preparation of the opinion.

related forms, in violation of 26 U.S.C. § 7205[1] and 18 U.S.C. § 2.[2] Buttorff was indicted on 11 counts and convicted on 9.[3] Dodge was separately indicted on 8 counts and was convicted on all 8.[4]

The charges against these defendants arise from their participation in a series of public and private meetings which were held in February and March of 1975, and which were attended by numerous employees of the John Deere Tractor plant in Dubuque, Iowa. Fifteen of those employees subsequently filed income tax withholding forms W–4[5] or W–4E[6] with John Deere, claiming allowances in excess of those to which they were entitled, or falsely certifying that they received no taxable income during the prior year and expected to receive none during the current year. Those men all either pleaded guilty to, or were convicted by juries of, violations of 26 U.S.C. § 7205.

Dodge was charged with aiding or abetting six of those men[7] and Buttorff was charged with aiding or abetting eight of them.[8]

## A. Sufficiency of the Evidence/Freedom of Speech.

Both defendants challenge the sufficiency of the evidence on the aiding and abetting charges and raise the issue of their first amendment rights of freedom of assembly and freedom of speech. We agree that the facts here present a close question.

The government's evidence showed[9] that Buttorff and Dodge addressed at least four large public gatherings in northeastern Iowa and western Wisconsin early in 1975. Each of the principals testified that he attended one or more of those meetings. Most of the testimony recalled speeches given by the defendants, the major portion of which dealt with the Constitution, the Bible, and the unconstitutionality of the graduated income tax. The evidence indicates that the discussions of the W–4 and W–4E forms occurred primarily during question and answer sessions following the speeches.

The principals all testified that they submitted false or fraudulent forms because of the defendants' recommendations, advice or suggestions. Some indicated that the defendants told them to divide their yearly allowances, indicating to their employer the number of various income tax withholding allowances to which they may be entitled. Those allowances included, for example, dependents, exemptions such as blindness, and expected deductions such as charitable contributions or medical expenses.

1. 26 U.S.C. § 7205 provides:
   Any individual required to supply information to his employer under section 3402 [Employer withholding provisions] who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law * * * upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

2. 18 U.S.C. § 2 provides:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense' against the United States, is punishable as a principal.

3. Gordon S. Buttorff was sentenced to nine concurrent one year prison terms.

4. Charles A. Dodge was sentenced to eight concurrent one year prison terms.

5. Internal Revenue Service agent George Wood testified that the W–4 form, in early 1975, was a form to be prepared by new employees or by employees with changes in their number of

6. The W–4E, Wood stated, was a form to be filed annually by eligible employees, certifying that they incurred no income tax liability in the prior year and they expected to incur no liability in the current year.

7. Dodge was charged with aiding or abetting Thomas Walton, Jr., in three separate counts involving the filing of three forms.

8. Buttorff was charged with aiding or abetting Walton in four separate counts involving the filing of four forms.

9. Since the jury found Dodge guilty on eight counts and Buttorff guilty on nine, we must view the evidence on those counts in the light most favorable to the government. *See United States v. Abrahamson*, 568 F.2d 604 (8th Cir., 1978); *United States v. Hill*, 464 F.2d 1287, 1288 (8th Cir. 1972).

salary by 750 to determine the number of claimed allowances necessary to stop withholding. Others testified that they heard the defendants say that 30 or 40 claimed allowances would be sufficient to stop withholding. All the principals claimed between 28 and 40 allowances on their subsequently filed W–4 forms.

Only one principal testified to an affirmative action, other than speaking, by either defendant. Vernon Van Natta testified that Buttorff came to his father's home and provided him with a W–4 form. He stated that the form already had the number 20 written in and either he or Buttorff changed it to 28.

No other principal testified that either defendant actually assisted him in preparing a W–4 or W–4E, or was with him when he filed such a form. Most testified to having other sources of information on tax evasion and other influences on his activity in the tax protest movement. However, all principals indicated that they filed withholding forms as a result of attending these tax protest meetings and many paid various amounts of money to the defendants for a wide range of tax related services.

The Supreme Court has held that to establish aiding or abetting the government need only show "that a defendant 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949), *quoting United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.

1938). This court has interpreted that language to mean that "there must exist some affirmative participation which at least encourages the perpetrator." *United States v. Wiebold,* 507 F.2d 932, 934 (8th Cir. 1974), *quoting United States v. Thomas,* 469 F.2d 145, 147 (8th Cir. 1972), *cert. denied,* 410 U.S. 957, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973).

Under this language we find that the evidence was sufficient to allow the jury to decide whether the defendants' activities constituted aiding and abetting the filing of fraudulent withholding statements.[10] Each was associated with the tax evasion movement; each opposed the graduated income tax and wanted to bring about its demise; and each, by speaking to large groups of persons, sought to advance his ideas and encourage others to evade income taxes.

The problem here, of course, is that each defendant's only participation in the allegedly illegal activity of the principals, except with regard to Van Natta, was to talk about his ideas before gatherings of disgruntled Americans. What this court must decide is whether the first amendment protections of free speech and assembly prohibit the convictions of these defendants for their activities here.

There is no doubt that the right of free speech is fundamental and may not be denied or abridged. *See Whitney v. California,* 274 U.S. 357, 373, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring). That right, however, is not in its nature absolute. *Id.*

---

10. In reaching this conclusion regarding the sufficiency of the evidence, we rely not only on Vernon Van Natta's testimony that Buttorff supplied him with a W–4 form and assisted him in filling it out, but on testimony of each principal that the defendants advised or counseled him, either individually or as a member of a group, regarding the fraudulent use of a W–4 form. Daniel Schaefer's testimony is typical:

Q. Did anybody advise or counsel you to claim the number of dependents that you have stated you claimed?

    *    *    *    *    *    *

A. From my understanding of the meetings that I attended, I understood that you had to claim so many allowances to get these—to

get your income taxes stopped. So this was the amount that I had claimed in order to have my income taxes withheld.

Q. How did you arrive at the number that appears on that document claimed?

A. Well, from the number here that was claimed, it arrived through Mr. Buttorff and Mr. Dodge.

Q. From—Did they explain to you how they arrived at that number?

A. They just said for every $750.00 that a person earned or his [sic] an allowance, you know, they just stated that you have to have so many to get your taxes stopped. This was the number that I arrived at because of my income was at this point.

Judge Learned Hand dealt with free speech in the context of counseling or advising others to violate the law in *Masses Publishing Co. v. Patten,* 244 F. 535 (S.D.N.Y.1917). His language is relevant here:

One may not counsel or advise others to violate the law as it stands. Words are not only the keys of persuasion, but the triggers of action, and those which have no purport but to counsel the violation of law cannot by any latitude of interpretation be a part of that public opinion which is the final source of government in a democratic state. * * * To counsel or advise a man to an act is to urge upon him either that it is his interest or his duty to do it. While, of course, this may be accomplished as well by indirection as expressly, since words carry the meaning that they impart, the definition is exhaustive, I think, and I shall use it. Political agitation, by the passions it arouses or the convictions it engenders, may in fact stimulate men to the violation of law. Detestation of existing policies is easily transformed into forcible resistance of the authority which puts them in execution, and it would be folly to disregard the causal relation between the two. Yet to assimilate agitation, legitimate as such, with direct incitement to violent resistance, is to disregard the tolerance of all methods of political agitation which in normal times is a safeguard of free government. The distinction is not a scholastic subterfuge, but a hard-bought acquisition in the fight for freedom, and the purpose to disregard it must be evident when the power exists. If one stops short of urging upon others that it is their duty or their interest to resist the law, it seems to me one should not be

held to have attempted to cause its violation.

*Id.* at 540.

More recently, the Supreme Court has distinguished between speech which merely advocates law violation and speech which incites imminent lawless activity. *See Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). The former is protected; the latter is not.

■ Although the speeches here do not incite the type of imminent lawless activity referred to in criminal syndicalism cases, the defendants did go beyond mere advocacy of tax reform. They explained how to avoid withholding and their speeches and explanations incited several individuals to activity that violated federal law and had the potential of substantially hindering the administration of the revenue. This speech is not entitled to first amendment protection and, as discussed above, was sufficient action to constitute aiding and abetting the filing of false or fraudulent withholding forms.

## B. Dodge's Other Allegations of Error.

Dodge alleges several other errors in the proceedings which led to his conviction. First he challenges the indictment for three reasons: 1) that 26 U.S.C. § 7205, when coupled with 26 U.S.C. § 3402 and the thousands of pages of regulations, is too vague to be understood by the ordinary citizen and therefore too vague to be enforced; 2) that he should have been indicted under 26 U.S.C. § 7206(2) [11] rather than § 7205; and 3) that the two-year delay in indicting him was prejudicial.

■ Although there are many regulations involved in Internal Revenue Code sections named in the indictment, the

---

11. 26 U.S.C. § 7206(2) provides:

Any person who—

     *    *    *    *    *    *

(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter,

whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; * * *

     *    *    *    *    *    *

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

charge is not remote or vague. "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) (footnotes omitted). There is no doubt that the code sections named in the indictment proscribe the filing of a false or fraudulent withholding form and that defendants were capable of understanding this meaning of the statute.

■ There was no error in failing to suppress the indictment because Dodge was charged under § 7205 and the aider and abettor provision in 18 U.S.C. § 2, rather than under § 7206(2). The principals were all convicted on § 7205 charges, and § 2 has been applied to Internal Revenue Code provisions. *See United States v. Johnson*, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943). Even if Dodge's conduct was proscribed by § 7206(2), this court has held that when a "defendant's conduct is punishable under two or more statutes and the Government chooses the one providing a harsher penalty, the defendant cannot complain." *United States v. Phillips*, 522 F.2d 388, 393 (8th Cir. 1975). Under that reasoning, Dodge's argument that he was inappropriately charged under the statute providing the *lesser* penalty is frivolous.

■ Dodge was indicted on March 28, 1977, two years after the date of the last principal offense, and 21 months after the convictions of the principals. The government has offered no explanation for the long delay. This court recognizes that "an unreasonable pre-accusation delay, coupled with prejudice to the defendant, may violate the Fifth Amendment, * * *." *See United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975), and cases cited therein. However, Dodge has not alleged any specific prejudice created by the delay. Although we do not condone the government's actions, we find no constitutional error in the prolonged delay.

Dodge claims that the district court erred in denying his motion for a bill of particulars requesting more specific dates and places of the alleged offenses. He claims he was prejudiced by the denial because he geared his defense to proof that he was not in Dubuque on the dates charged in the indictment.

■ Dodge apparently misunderstands the aiding and abetting charges. Although he spoke on dates other than those mentioned in the indictment, the aiding and abetting charges could not be brought until after the commission of the principal offenses on the dates charged. *Cf. Shuttlesworth v. Birmingham*, 373 U.S. 262, 265, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); *United States v. Barker*, 542 F.2d 479, 484 (8th Cir. 1976). In any event, the transcript of the pretrial discussion between the court, counsel and defendants indicates that prior to trial the government had provided each defendant with all the evidence it intended to use against him.

Dodge also alleges several errors in the trial itself. He contends: 1) that he was denied his right to voir dire; 2) that the government improperly made prejudicial comments about the Little People's Tax Advisory Committee; 3) that he was denied his fifth amendment right against self-incrimination by a response of witness Walton; 4) that the government and the court prejudiced the jury against him by their references to the *Posse Comitatus*; and 5) that the trial court erred in refusing to give some of his requested jury instructions.

■ Three of these allegations may be summarily dismissed. The trial judge conducted the voir dire of the jury pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure. Additional questions, requested by the defendant, were not asked. The defendant has not shown how he was prejudiced by this failure and we find no abuse of discretion. *Cf. United States v. Kershman*, 555 F.2d 198 (8th Cir. 1977); *United*

*States v. Lewis*, 547 F.2d 1030 (8th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977), and cases cited therein.

▇▇▇ We have reviewed the record and find no prejudicial error in the references to either the Little People's Tax Advisory Committee or the *Posse Comitatus.*

The fifth amendment issue presents a more difficult question. When asked by the government why he had decided to plead guilty one of the principals testified that he had contacted Dodge to be a witness in his defense, but Dodge had refused to come. The witness stated: "I knew when Mr. Dodge said he wouldn't incriminate himself. If he thought he was guilty, then I knew I had something to be guilty about."

▇▇▇ Disregarding for a moment the fifth amendment concern, Dodge's statement was an admission against interest admissible under Rule 801(d)(2) of the Federal Rules of Evidence. Extrajudicial admissions and confessions to nonlaw enforcement persons are admissible when they are "freely and voluntarily made, without threat or inducement, and without taint of illegality in their procurement * * *." *Jones v. United States,* 111 U.S.App.D.C. 276, 280, 296 F.2d 398, 402 (1962).

▇▇▇ However, the major problem here is not one of hearsay or confrontation, but of self-incrimination since the admission suggests a refusal to testify. Although that refusal involved another defendant and another trial, we note that Dodge did not take the stand in his own defense. Of course the *prosecutor* may not comment on the defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States v. Sanders,* 547 F.2d 1037, 1042 (8th Cir. 1976). The situation here is somewhat different. We have reviewed the transcript and find that the comment by *the witness* was not emphasized or mentioned again, and although it was out-of-place, it was not so prejudicial

as to require a new trial. Furthermore, the trial court did instruct the jury that no presumption of guilt or inference of any kind could be drawn from the defendant's failure to testify.

▇▇▇ Although we find no merit in Dodge's allegations regarding the jury instructions, one deserves comment. Dodge contends that refusal to instruct the jury that proof that the principal submitted incorrect withholding information was insufficient without requiring further proof that someone was misled by the false information. He cites *United States v. Snider,* 502 F.2d 645 (4th Cir. 1974). This court rejected the "false in the sense of deceptive" standard of *Snider* in *United States v. Hinderman,* 528 F.2d 100 (8th Cir. 1975). We held that the intent necessary for a § 7205 violation is the "intent to interfere with the withholding system and prevent the collection of taxes in the manner prescribed by law." *Id.* at 102. There was no error in the jury instructions.

Finally, Dodge reasserts, by reference, matters raised in his post-trial motions.[12] We have reviewed those motions and find the matters were properly resolved by the district court in its unpublished order of July 27, 1977, denying the motions.

## C. *Buttorff's Other Allegations of Error.*

▇▇▇ Buttorff also raises several additional issues. He challenges the use of the words "false" and "willful" in the indictment and jury instructions, contending that they are inconsistent with the "intent to deceive" standard established in *United States v. Snider, supra,* 502 F.2d at 655. As indicated above, this court has rejected the *Snider* standard. *See United States v. Hinderman, supra,* 528 F.2d at 102. The jury was properly instructed on the issue of intent and the evidence was sufficient to support the verdict.

Buttorff alleges illegality and unconstitutionality in the grand jury proceedings. Since these issues were not raised below,

---

**12.** The defendants filed joint post-trial motions for judgment of acquittal, or for a new trial, or for an arrest of judgment. They assert 70 reasons for the bringing of those motions.

this court may not review them for the first time on appeal. *See* Fed.R.Crim.P. 12(b)(2); *Davis v. United States,* 411 U.S. 233, 236–37, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *United States v. Calvert,* 523 F.2d 895, 901–02 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Little v. United States,* 524 F.2d 335, 337 (8th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 326 (1976); *Vincent v. United States,* 361 F.2d 474, 476 (8th Cir. 1966).

■ Buttorff argues that the district court refused to allow a layman to represent him and he was therefore denied his right to effective assistance of counsel. The transcript does not indicate that Buttorff raised this issue below, and the issue was therefore not preserved for review by this court. *See Little v. United States, supra,* 524 F.2d at 337; *Vincent v. United States, supra,* 361 F.2d at 476. In any event it is well-established that while a criminal defendant has a right to defend himself, he has no constitutional right to have an unlicensed attorney represent him. *See United States v. Hinderman, supra,* 528 F.2d at 103.

■ Buttorff challenges the oath taken by the jury and the district court's failure to instruct the jury of their right to ignore the judge's instructions as to the law if the law as stated appeared unjust to the jurors. This issue is without merit. A defendant is not entitled to a jury nullification instruction. *See United States v. Wiley,* 503 F.2d 106 (8th Cir. 1974).

■ The district court denied Buttorff's motion for change of venue based on the inconvenience and pretrial publicity. Buttorff argues this was error.

Buttorff contends that the trial should have held in Texas where it would have been more convenient for him. This argument lacks merit. Rule 18 of the Federal Rules of Criminal Procedure provides that "prosecution shall be had in a district in which the offense was committed." Venue in an aiding and abetting charge is also proper in the district where the substantive crimes were committed. *See United States v. Buckhanon,* 505 F.2d 1079, 1083 (8th Cir. 1974). Texas was not a proper location for trial under Rule 18 or *Buckhanon.*

■ Buttorff also argues that the district court should have transferred the case from the Northern District of Iowa pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure.[13] A motion to transfer based on prejudicial pretrial publicity is addressed to the sound discretion of the district court. *United States v. Brown,* 540 F.2d 364, 377 (8th Cir. 1976). The district court found that the defendant's motion made "no showing that there exists in the district so great a prejudice against the defendant that he cannot obtain a fair trial * * *." Absent a showing of such prejudice, we find no abuse of discretion in refusal to grant the motion.

■ Finally, Buttorff contends that he was denied the opportunity to present favorable evidence in his defense. Buttorff attempted to introduce testimony of William Evans that Evans was offered clemency on a § 7205 charge in Texas in exchange for Evans' testimony against Buttorff. Buttorff contends that Evans' testimony would "prove that a conspiracy existed on the part of the United States Government Internal Revenue Service against [Buttorff]." The district court sustained the government's relevancy objection and no offer of proof was made. The transcript indicates that no charges were brought against Buttorff in Texas and Evans did not testify against Buttorff in Iowa. The relevancy objection was properly sustained.

---

13. Rule 21(a) of the Federal Rules of Criminal Procedure provides:

The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

*D. Conclusion.*

The evidence was sufficient to support the verdicts against these defendants; the portions of their speeches counseling the principals in the technique of evasion of income taxes were not protected by the first amendment; and their allegations of error in the district court proceedings are either not substantiated by the record or lack merit.

The judgments of the district court are affirmed.