**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gary BARNETT, Defendant-Appellee.**

**No. 81–1102.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 17, 1981.

Decided Feb. 8, 1982.

Brian C. Leighton, Asst. U. S. Atty., Fresno, Cal., for plaintiff-appellant.

Daniel A. Bacon, Fresno, Cal., for defend-ant-appellee.

Before TANG and ALARCON, Circuit Judges and KELLAM *, Senior District Judge.

ALARCON, Circuit Judge:

The government appeals the district court's order: (1) suppressing all items seized in a search of Gary Barnett's residence pursuant to a warrant; and (2) prohibiting the government from presenting "[e]vidence that defendant did not advertise in certain recognized scientific magazines." We reverse.

## PROCEDURAL BACKGROUND

On September 4, 1980, Barnett was charged in a three count indictment with: (1) aiding and abetting Donald Eugene Hensley in the attempted manufacture of phencyclidine (Count I); (2) using United States mails to cause and facilitate the commission of the crime of attempted manufacture of phencyclidine "on or about February 8, 1979 to on or about May 11, 1979" (Count II); and (3) using the United States mails on or about August 7, 1980, to facilitate the attempted manufacture of phencyclidine (Count III).

On December 5, 1980, Barnett filed a motion to suppress evidence seized in a search of his residence pursuant to a warrant. A warrant issued on August 21, 1980, authorized "any special agent of the Drug Enforcement Administration" to search Barnett's apartment, located at 2313 East 24th Street, Brooklyn, New York. The motion alleged the search warrant was invalid on the following grounds:

1. That the Affidavit for Search Warrant is based upon inaccurate and incomplete information.

2. That said Affidavit for Search Warrant is insufficient in law to establish probable cause for the issuance of a Search Warrant;

3. The Affidavit states no facts sufficient to establish probable cause justifying the issuance of a Search Warrant;

4. That the facts alleged in the Search Warrant were insufficient to connect your Petitioner with any illegal conduct or participation;

5. Upon information and belief, at no time did the government allege or believe that contraband or the fruits of any crime would be found in the residence of the Petitioner. That moreover, the government knew or should have known that the material they sought to seize was protected by the First Amendment to the United States Constitution, and the seizure of same violated the defendant's rights under the First, Fourth and Fifth Amendments as aforesaid;

6. That upon information and belief, the United States Patent Office, through libraries and otherwise, makes available to the general public inter alia, the formulas and instructions for manufacture and chemical combination of Phencyclidine. That attached hereto as Exhibit "A", is a copy of said Patent No. 3,097,135 from the U.S. Patent Office, which is the formula and instructions for the manufacture of Phencyclidine (PCP). That the other material requested or demanded to be seized by the government is information legally obtained and possessed without any nexus to criminal activity;

7. The Affidavit in support of the Search Warrant and the said Search Warrant fail to adequately describe the place to be searched;

8. The Search Warrant herein was issued on the basis of an insufficient Affidavit for Search Warrant and solely upon the belief of the affiant who made said Affidavit and upon certain unsupported hearsay. That moreover, as a matter of law, the material requested is protected by the rights of Petitioner under the First Amendment to the United States Constitution, and further by the equal protection and due process of laws.

Also on December 5, 1980, Barnett filed a motion to dismiss the indictment on the following grounds:

---

* Hon. Richard B. Kellam, Senior United States District Judge for the District of Virginia, sitting by designation.

1. The Indictment does not state facts sufficient to constitute an offense against the United States.

2. The Indictment is violative of equal protection, due process, ex post facto [sic], and the First and Sixth Amendments of the United States Constitution.

3. That the Government is equitably estopped from proceeding upon the said Indictment, which should thereby be dismissed in the interests of justice.

4. That the Third Count of the Indictment should be dismissed because there was no underlying felony to facilitate.

On December 30, 1980, to obtain an advance ruling as to the admissibility of certain evidence, the government filed a "Notice of Intention to use Evidence at Trial." The evidence included, *inter alia*, "[e]vidence that the defendant did not advertise in certain recognized scientific magazines."

On February 4, 1981, the district court, 507 F.Supp. 670, issued a memorandum decision setting forth the following: (1) Barnett's motion to suppress the evidence seized pursuant to the search warrant issued August 21, 1980, was granted. The district court concluded that the motion to suppress must be granted because none of the "seized articles were either contraband, evidence of criminal activity, or connected with criminal activity"; (2) Barnett's motion to dismiss the indictment was denied; and (3) "evidence that defendant did not advertise in certain recognized scientific magazines" would not be admissible.

PERTINENT FACTS [1]

On June 1, 1980, Agent Sherrington of the Drug Enforcement Administration, accompanied by other law enforcement officers, executed a federal search warrant at the residence of Donald Eugene Hensley in Modesto, California.

Hensley was found seated in the rear yard next to an outbuilding which contained an operational phencyclidine (PCP) factory. He was reading a document entitled "Synthesis of PCP—Preparation of Angel Dust". After his arrest Hensley stated that "he was attempting to manufacture PCP and had been doing so for sometime." He also stated that through an advertisement published in "High Times Magazine", "a drug related periodical" he learned of United States News Service, Post Office Box 333, Bay Station, Brooklyn, New York. Hensley told Agent Sherrington that he responded to the advertisement in *High Times*, a drug related periodical, and received from United News Service a catalog of "available drug manufacture instructions". He then forwarded a postal money order in the amount of ten dollars ($10.00) to United News Service for the instructions for the manufacture of PCP. Thereafter Hensley received from United News Service the instructions for the manufacture of PCP. He was using these instructions at the time of his arrest. Together with the instructions United News Service supplied Hensley with the address of "Merrill Scientific" Merrill Scientific was described in the materials as a "reliable supply house" for the chemicals necessary for the manufacture of PCP. Hensley ordered the chemicals for his PCP laboratory from Merrill Scientific.

Hensley pleaded guilty to charges of attempted manufacture of PCP.

Agent Sherrington seized the following documents from Hensley's residence:

(1) United News Service catalogs of available synthesis reports for the manufacture of methaqualone (quaaludes), methamphetamine (speed), phencyclidine (PCP), dimethyltrayptamine (DMT), lysergic acid (LSD), amphetamine, and cocaine.

(2) A newsletter from United News Service suggesting ordering synthesis reports now because with the Drug Enforcement Administration's intensification program "[w]e have no way of predicting how much longer we will be able to offer these special synthesis reports to you."

---

1. The relevant facts are contained in the affidavit of Agent James F. Sherrington, filed in support of the application for a search warrant.

(3) A document from United News Service which provides that a reliable source for obtaining chemicals, supplies, cab equipment, etc., is Merrill Scientific, 1665 Buffalo Road, Rochester, New York 14624.

(4) Eight envelopes addressed to Don Hensley and United News Service as the return address.

(5) Three United Postal money order receipts each in the amount of ten dollars ($10.00) bearing the name of United News Service as the payee.

On July 29, 1980, Agent Sherrington obtained cancelled money orders from the Postal Inspector's Office in Fresno, California, which correspond to the money order receipts found in Hensley's residence. Each money order was endorsed by "G. Barnett" and stamped "United News Service, P. O. Box 333, Bay Station, Brooklyn, New York 11235."

Agent Sherrington was advised by Special Agent John Huber that Post Office Box 333, was subscribed to by Gary Barnett. Special Agent John Huber observed Gary Barnett leave his apartment and travel to the Bay Station Post Office where Barnett deposited mail and picked up incoming mail from Box 333.

On August 2, 1980, Agent Sherrington, using the name James Fredericks, sent United News Service a thirty dollar ($30.00) money order requesting instructions to manufacture PCP, amphetamines, and methaqualone. Special Agent Huber observed Barnett pick up the James Frederick letter from Box 333 and take it to his apartment.

On August 7, 1980, Barnett was observed leaving his apartment carrying mail. He drove directly to the Bay Station Post Office and deposited the mail. Special Agent Huber examined the mail and found a brown envelope addressed to James Fredericks, c/o Post Office Box 11705, Fresno, California, 93774, the address used by Agent Sherrington in ordering the synthesis reports.

The envelope contained:

(1) A one page document entitled "Synthesis of PCP/Angel Dust." A copy of this document was seized from Hensley's residence.

(2) A document entitled "Synthetic Routes to Amphetamines." A copy of this document was seized from Hensley's residence.

(3) A document entitled "A Feasible Synthesis of Methaqualone Hydrochloride" produced by United News Service.

(4) A document entitled "Chemicals used in Drug Synthesis." The cover of this material bears the following words: "A UNS Special Report Produced by UNS All Rights Reserved, 1980, Complimentary Copy." This material contains a description of the chemicals used in the production of drugs and contains a symbol "(W)" for chemicals on the Drug Enforcement Administration watch list. The pamphlet contained instructions for the ordering of chemicals including the following directions:

1. "Send in separate orders using separate names and addresses."

2. "Have order sent to another address that is used for anything but living."

3. "Use some friend's phone not connected with you."

4. "Obtain a copyrighted 'DEA List of Watched Chemicals.'"

Based on these facts a search warrant was issued. The warrant described the premises to be searched as:

"PREMISES KNOWN AS THE GROUND FLOOR APARTMENT WITH AN ENTRANCE FACING AVENUE W LOCATED AT THE GROUND FLOOR OF A TWO FAMILY, THREE STORY SEMI-ATTACHED RED BRICK DWELLING LOCATED AT 2313 EAST 24th STREET, BROOKLYN, NEW YORK."

The property to be seized was described in the warrant as:

[I]nstructions for preparation or manufacture of methaqualone, methamphetamine, phencyclidine, dimethyltrayptamine, lysergic acid, amphetamine and cocaine; catalogs of controlled substance

preparation or manufacture instructions; mailing lists for drug related correspondence; business correspondence received by United News Service and addressed from United News Service to others; and documents reflecting locations to purchase chemicals and surreptitious means of purchasing chemicals. . . .

Following this list, the warrant stated: "all of which is property that constitutes evidence of the commission of a violation of Title 21, United States Code, Section 846, and § 841(a)(1), § 846, 18 U.S.C. § 2."

On August 21, 1980, Agent Sherrington filed an inventory which listed the following items as property seized from the described premises:

Cardboard drawer containing instructions for manufacture of PCP, methamphetamine, amphetamine, dimethyltrayptamine, mescaline, methaqualone, cocaine and others, *United News Service* correspondence, order forms, drug pamphlets, brochures, mailing lists and advertizements [sic] relating to drugs; eight (8) cardboard boxes containing UNS envelopes, stationary, brochures and advertizing [sic] materials relating to UNS operations; one (1) plastic file cabinet containing addressograph file cards with names and addresses; several envelopes containing postal money order receipts, registered mail receipts, telephone and utility bills; UNS stamps and addressing and mailing materials; seven (7) casette tapes; one (1) box containing miscellaneous UNS correspondence; and documents relating to locations and means of purchasing chemicals used in the manufacture of drugs.

## VALIDITY OF THE SEARCH

Stripped of the excesses attributable to zealous appellate advocacy, we are left with three questions to be resolved in determining the validity of the suppression order.

(1) Did the affidavit for the warrant contain sufficient facts to establish probable cause that evidence of a crime would be found on the premises to be searched?

(2) Did the warrant identify with sufficient specificity items which would aid the government in obtaining a conviction of Barnett for the crime of aiding and abetting the Commission of a crime?

(3) Did the items seized constitute evidence which would aid the government in obtaining a conviction of Barnett for aiding and abetting the commission of a crime?

We begin our review of the district court's suppression order by noting the narrow and precise grounds articulated by the trial judge in his decision. The trial judge granted Barnett's motion to suppress because none of the items seized "were either contraband, evidence of criminal activity, or connected with criminal activity." We disagree with this analysis for the reasons stated below.

### A. *Probable Cause*

An affidavit for a search warrant must contain facts to establish probable cause that evidence of a crime would be found on the premises to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 554, 98 S.Ct. 1970, 1975–76, 56 L.Ed. 525 (1978). The affidavit in support of the warrant in the matter *sub judice* did establish the required probable cause.

The facts set forth in the affidavit establish that a person or persons doing business as the United News Service advertised in *High Times* magazine that by writing to United News Service anyone wishing to receive a catalog of available drug manufacture instructions could obtain one by writing to United News Service. Hensley sent a ten dollar ($10.00) postal money order to the designated address and received instructions for the manufacture of PCP. Hensley was also furnished with the name of a "reliable" supplier of the necessary chemicals. Hensley attempted to manufacture PCP following the instructions furnished to him by United News Service. At the time of Hensley's arrest he was consulting the instructions furnished to him by United News Service while preparing a batch of PCP. A search of Hensley's residence revealed money order receipts in the

amount of ten dollars ($10.00) bearing the name of United News Service. Cancelled money orders which matched the receipts found in Hensley's residence were endorsed by G. Barnett. Post Office Box 333 was subscribed to by a person named Gary Barnett and Barnett was observed picking up incoming mail from Box 333. Hensley pleaded guilty to the crime of attempting to manufacture PCP.

The magistrate concluded from these facts that there was probable cause to believe that evidence of a crime could be found on the premises to be searched. We agree.

*The Existence of a Crime*

■ The applicable law governing the crime of aiding and abetting provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States "is punishable as a principal". 18 U.S.C. § 2 (1976). "Aiding and abetting, as used in 18 U.S.C. § 2, means to assist the perpetrators of a crime." *United States v. Lane*, 514 F.2d 22, 26 (9th Cir. 1975). *See Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). An abettor is one "who, with *mens rea*, ... commands, counsels or otherwise encourages the perpetrator to commit the crime." Perkins, *Criminal Law*, at 645 (2d ed. 1969).

■ The fact that the aider and abettor's counsel and encouragement is not acted upon for long periods of time does not break the actual connection between the commission of the crime and the advice to commit it. "It is only necessary that the appellant counseled and advised the commission of the crime, and that the counsel and advice influenced the perpetration of the crime. We know of no rule of law which fixes a time limit within which the crime must be perpetrated." *Workman v. State*, 216 Ind. 68, 21 N.E.2d 712, 714 (1939).

■ An aider and abettor "is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence

may not have been intended by him...." *Russell v. United States*, 222 F.2d 197, 199 (5th Cir. 1955) (citations omitted). "It is not prerequisite to the conviction of the aider and abettor that the principal be tried and convicted or in fact even be identified." *United States v. Provenzano*, 334 F.2d 678, 691 (3d Cir.), *cert. denied*, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *see also Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir.), *cert. denied*, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970). "It is not essential that the accessory know the modus operandi of the principal." *Russell v. United States*, 222 F.2d 197, 199 (5th Cir. 1955); *see also United States v. Austin*, 585 F.2d 1271, 1277 (5th Cir. 1978). It is also not necessary that the person accused of aiding and abetting "know all the details of the crime ..." or "all the persons who were perpetrating the crime." *United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975).

■ Applying the principles of aiding and abetting to the facts before us, it is quite clear that the search warrant contained sufficient facts to establish probable cause to believe that evidence of the crime of aiding and abetting could be found on the premises to be searched.

The facts show that Barnett, doing business as United News Service, induced Donald Eugene Hensley to pay ten dollars ($10.00) for the formula for the manufacture of phencyclidine. Gary Barnett furnished information to Hensley as to a "reliable source" from which he could obtain the necessary chemicals, supplies and equipment to manufacture phencyclidine. Hensley followed the instructions mailed to him by Barnett in attempting to manufacture phencyclidine. At the time of his arrest Hensley was observed manufacturing phencyclidine from the formula sent to him by Barnett. Hensley pleaded guilty to the attempted manufacture of phencyclidine.

■ As noted above, encouraging and counseling another by providing specific information as to how to commit a complex crime does not alone constitute aiding and abetting. If, however, the person so assisted or incited, commits the crime he was

encouraged to perpetrate, his counselor is guilty of aiding and abetting. This distinction is sharply drawn in the facts before us.

■ Gary Barnett, doing business as United News Service, furnished instructions for the manufacture of phencyclidine to both Agent Sherrington and Hensley. Agent Sherrington did not use these instructions in an attempt to manufacture phencyclidine. He was merely gathering evidence to establish probable cause for a search warrant. Thus, Barnett cannot be guilty of aiding and abetting Agent Sherrington in the commission of a crime, i.e., the attempt to manufacture phencyclidine since that crime was not committed by Agent Sherrington. Hensley, however, used Barnett's formula in an attempt to manufacture phencyclidine in violation of federal law, and pleaded guilty to that crime.

The district court correctly perceived this distinction by dismissing Count III of the indictment which charged Barnett with using the United States mails on or about August 7, 1980, to facilitate the attempted manufacture of phencyclidine by Agent Sherrington, while denying Barnett's motion to dismiss the charge of aiding and abetting Hensley in the commission of a crime and the separate allegation of using the mails to facilitate the commission of that crime.

Barnett argued in his brief that "the information contained within the four corners of the affidavit is insufficient to give rise to a finding of probable cause to believe that Barnett was involved in any criminal activity." It is not at all clear from the brief the particular theory Barnett has in mind to support this conclusion. Barnett does make reference to the dismissal of Count III on the government's motion. As discussed above, this concession by the government was quite consistent with the requirement that a crime must be committed by the principal before an aider and abettor can be charged with an offense.

■ In the points and authorities filed in connection with his motion to suppress, Bar-

nett claimed that the items seized were protected by the first amendment. In his brief filed in support of his motion to dismiss the indictment, Barnett argued that he had a first amendment right "to disseminate and exchange this information through the mails even if the recipients use the same for unlawful purposes." No authority is cited in support of this novel proposition.

Barnett appears to argue as follows:

1. The first amendment protects speech including the printed word.

2. Barnett sells printed instructions for the manufacture of phencyclidine.

3. Therefore, the first amendment protects Barnett's sale of printed instructions for the manufacture of phencyclidine.

This specious syllogism finds no support in the law.

■ The first amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose. Crimes, including that of aiding and abetting, frequently involve the use of speech as part of the criminal transaction. The use of a printed message to a bank teller requesting money coupled with a threat of violence, the placing of a false representation in a written contract, the forging of a check, and the false statement to a government official, are all familiar acts which constitute crimes despite the use of speech as an instrumentality for the commission thereof.

A similar first amendment argument was proferred in *United States v. Buttorff,* 572 F.2d 619 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). In *Buttorff* the defendants were convicted of aiding and abetting persons who filed false or fraudulent tax returns after hearing defendants address a public meeting as to various ways to avoid payment of taxes, including claiming large numbers of allowances to stop withholding. The court held:

Although the speeches here do not incite the type of imminent lawless activity referred to in criminal syndicalism cases, the defendants did go beyond mere advocacy of tax reform. They explained how

to avoid withholding and their speeches and explanations incited several individuals to activity that violated federal law and had the potential of substantially hindering the administration of the revenue. This speech is not entitled to first amendment protection and, as discussed above, was sufficient action to constitute aiding and abetting the filing of false or fraudulent withholding forms.

*Id.* at 624.

It should be noted that in *Buttorff* the defendants had virtually no personal contact with the persons who filed false income tax returns. Instead, they gave speeches before large groups encouraging and advising others to evade income taxes. The court affirmed the conviction despite the absence of any proof that Buttorff profited from the filing of false tax returns by others, or had any knowledge of the fact that such returns had been in fact filed. *See also United States v. Moss,* 604 F.2d 569, 571 (8th Cir. 1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980) (citing *Buttorff* in holding that defendant has no first amendment protection for a speech explaining how to violate federal income tax laws).

 We are not here concerned with the defense Barnett may interpose at his trial; our concern is, rather, the existence of probable cause to support a search. To the extent, however, that Barnett appears to contend that he is immune from search or *prosecution* because he uses the printed word in encouraging and counseling others in the commission of a crime, we hold expressly that the first amendment does not provide a defense as a matter of law to such conduct. Furthermore, it is unnecessary for the government to show that Barnett ever met with Hensley in order to prove that he aided and abetted him in his attempt to manufacture phencyclidine. The facts alleged in the search warrant established that Barnett provided essential information for the specific purpose of assisting Hensley in the commission of a crime. They also established that evidence of that crime could be found on the premises to be searched—Barnett's residence. Nothing further was required.

## B. Adequacy of Identification of Items to be Seized

 The district court concluded that Agent Sherrington failed to state any basis in the affidavit for his belief that the articles sought are in any way connected with criminal activity. We disagree.

In *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court held that "mere evidence" can be seized pursuant to a search warrant if the facts set forth in the affidavit described evidence which "will aid in a particular apprehension or conviction." *Id.* at 307, 87 S.Ct. at 1650. Our task, then, is to determine if the items described in the affidavit would be relevant evidence in aiding the government in this prosecution of Barnett. The facts set forth in the affidavit establish that Barnett stored copies of the incriminating materials which he had sold to Hensley in his residence.

The seizure of additional instructions for the manufacture of PCP in Barnett's residence would establish at trial the highly relevant fact that United News Service was the fictitious alter ego of Barnett. Identity of the perpetrator of a crime is essential evidence to sustain any conviction. The presence of such material at Barnett's residence together with proof that Barnett had mailed instructions for the manufacture of illegal drugs to other persons would be admissible to prove that Barnett acted with knowledge and criminal intent.

 The fact that the items described in the search warrant included objects which did not directly relate to Barnett's transactions with Hensley is immaterial. The government may lawfully seize evidence of other acts if it tends to prove a suspect's intent with respect to criminal activity described in the affidavit in support of the search warrant. *Andresen v. Maryland,* 427 U.S. 463, 483–84, 96 S.Ct. 2737, 2749–50, 49 L.Ed.2d 627 (1976).

We are satisfied that the items identified in the search warrant were described with sufficient specificity and would be admissible as evidence on several grounds in the trial of Barnett for aiding and abetting Hensley.

#### C. Relevancy of the Items Seized to the Crime of Aiding and Abetting

The district court concluded that the items seized in the search of Barnett's residence should be suppressed because they were neither "contraband, evidence of criminal activity, or connected with criminal activity." As noted above, it is our view that the items seized would be admissible at trial as proof of knowledge, criminal intent, and identity. Under *Warden v. Hayden*, and *Andresen v. Maryland*, such evidence was properly seized because it will aid the government in proving the crime charged against Barnett.

### ADMISSIBILITY OF EVIDENCE THAT BARNETT DID ADVERTISE IN CERTAIN MAGAZINES

The district court ruled, in response to the government's motion in limine, that the government would be permitted to introduce evidence which identified the magazines in which Barnett placed advertisements, but could not offer proof as to those magazines in which he did not place advertisements. The court concluded that the first amendment compelled this result. No authority was cited for this proposition. As discussed above, the first amendment does not compel the exclusion of evidence simply because it consists of speech. If a defendant's words or his silence are relevant to prove some issue in the case, they are admissible subject to the rules of evidence and the fifth amendment privilege against self-incrimination. The court erred in ruling that the prosecution could not introduce evidence that Barnett did not advertise in certain magazines on first amendment grounds. We express no opinion as to whether such evidence has any probative value. That decision must be made by the trial court in the context of the issues presented at trial and the foundational facts presented by the government.

### CONCLUSION

The order suppressing the evidence seized pursuant to the search warrant is reversed. The order excluding evidence that Barnett did not advertise in certain magazines is also reversed.

The government's request that upon remand this matter be transferred to a different judge is denied. No evidence has been presented that the original trial judge will be unable to put out of his mind previously expressed legal views which we have determined were erroneous. We are certain that on remand the trial judge will correctly determine which facts are necessary to prove a defendant guilty of aiding and abetting by providing information as to how to commit a crime.

REVERSED.