**Bobby Joe WILSON, Individually, and as Guardian Ad Litem for Levi Goggin, Plaintiff,**

v.

**PALADIN ENTERPRISES, Inc., a foreign corporation, and Peder C. Lund, Defendants.**

Civil No. 00–6273–TC.

United States District Court, D. Oregon.

Oct. 3, 2001.

Don Corson, Johnson Clifton Larson & Corson, Eugene, OR, Scott C. Lucas, Johnson Clifton Larson & Corson, Eugene, OR, for Bobby Joe Wilson.

Jeffrey S. Eden, Bullivant Houser Bailey, P.C., Portland, OR, Lloyd Bernstein, Bullivant Houser Bailey, Portland, OR, Ronald E. Bailey, Bullivant Houser Bailey, Portland, OR, for Paladin Enterprises, Inc., Peder C. Lund.

## ORDER

COFFIN, United States Magistrate Judge.

Presently before the court is defendant Peder C. Lund's motion (# 19) to dismiss based on lack of personal jurisdiction and both defendants' motion (# 47) for summary judgment.

## BACKGROUND

The following facts are alleged by plaintiffs, and are taken as true for purposes of defendants' motions.

In 1998, plaintiff Bobby Joe Wilson and her then-husband, Robert Goggin, separated and were contemplating divorce. Goggin approached Robert Jones about the possibility of murdering Wilson and splitting the proceeds of a life insurance policy she held. Jones ordered *Hit Man: A Technical Manual for Independent Contractors* (*"Hit Man"*) and other publications from defendant Paladin Enterprises, and began plotting the murder of Wilson with Vincent Wayne Padgett. On September 4, 1998, Jones entered Wilson's home and attempted to murder her, following instructions from various Paladin publications, including *Hit Man.* Wilson's young son, plaintiff Levi Goggin, was in bed next to Wilson when Jones tried to murder her, and was himself assaulted. Jones was unsuccessful in his attempt and was later apprehended by police. Subsequently, Jones and Robert Goggin pled guilty to conspiracy to commit aggravated murder and first degree assault. Padgett, after two days of his criminal trial, allowed judgment to be entered against him for multiple counts of conspiracy to commit aggravated murder, first degree assault, and other crimes.

At Padgett's criminal trial, Jones testified that he had an account with Paladin Enterprises, that he ordered *Hit Man* from Paladin, that *Hit Man* was mailed to him at his place of employment, and that he and Padgett relied on *Hit Man* in planning Wilson's murder.

Plaintiffs filed this action in federal court on September 1, 2000. In their com-

plaint, plaintiffs assert two claims (one for each plaintiff) under each of the following theories: (1) assault and battery, by aiding and abetting; (2) assault and battery, by civil conspiracy; (3) strict product liability; and (4) negligence. Both defendants have asserted that the First Amendment acts as a bar for all claims and are asking the court for summary judgment in their favor, and defendant Lund has moved to dismiss all claims against him for lack of personal jurisdiction.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court must view the evidence in the light most favorable to the non-moving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. Of North America*, 638 F.2d 136, 140 (9th Cir.1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## STANDARDS FOR PERSONAL JURISDICTION

In order to issue an enforceable judgment against a defendant, a court must have personal jurisdiction over that party. When the defendant, as here, resides outside the state in which the court sits, the inquiry into personal jurisdiction requires a two part analysis: whether the forum state's long-arm statute permits the court to assert jurisdiction, and whether such assertion would violate defendant's due process rights. *Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir.1996). Because Oregon's long-arm statute is co-extensive with the outer limits of due process, only the constitutional issue needs addressing.

Due process requires that an out-of-state defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Further cases have refined the "minimum contacts" requirement

to allow a plaintiff to demonstrate contacts supporting the assertion of "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).[1] When the court considers jurisdictional motions based on party affidavits, plaintiff bears the burden of demonstrating that an assertion of personal jurisdiction is presumptively proper through a prima facie showing of jurisdictional facts. *American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996).

■ A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868. This is "general jurisdiction." The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts be of the sort that approximate physical presence. *See Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) (citing *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984)).

## DISCUSSION

### I. Defendants' Motion for Summary Judgment.

■ Succinctly put, defendants contend that the First Amendment provides a complete defense to all of plaintiffs' claims in the instant case.

From 1983 through 1999, defendant Paladin Enterprises ("Paladin")[2] published and offered for sale to the public *Hit Man: A Technical Manual for Independent Contractors.* As its title would suggest, *Hit Man* is an instructional textbook on the subject of how to pursue a successful career as a professional killer. There are 130 pages of detailed factual instructions on how to contract for, commit, and get away with murder.

Paladin has been in court before in litigation involving *Hit Man.* On March 6, 1993, a hired killer relied upon and studiously used much of the instructional material found in *Hit Man* to brutally murder Mildred Horn, her eight-year-old quadriplegic son Trevor, and Trevor's nurse, Janice Saunders, by shooting Horn and Saunders through the eyes and by strangling Trevor. The Fourth Circuit rejected the defendants' First Amendment defense in a well-written and thorough opinion reported at *Rice v. Paladin Enterprises, Inc.,* 128 F.3d 233 (4th Cir.1997). I adopt and incorporate by reference the *Rice* court's factual description of *Hit Man,* as well as its analysis of the First Amendment issues. In addition, I add the following observations.

Notwithstanding the triple homicide that was the subject of the *Rice* litigation and their knowledge that the manual had been used to plan and carry out those murders, defendants continued to publish and market *Hit Man.* Thus, Jones was able to utilize the instructions provided by the book in his attempt to murder plaintiff Wilson, in which she and her son were assaulted.

1. Because the court finds that defendant Lund's contacts are sufficient to assert general jurisdiction over him, discussion of the factors related to specific jurisdiction is not necessary.

2. Defendant Peder C. Lund is the president of Paladin, the sole member of its Board of Directors, and owns 90 percent of its stock (the remaining 10 percent is owned by his spouse).

Although Paladin stipulated in *Rice* that, in marketing *Hit Man*, it "intended to attract and assist criminals and would-be criminals who desire information and instructions on how to commit crimes" and that it "intended and had knowledge" that *Hit Man* actually "would be used, upon receipt, by criminals and would-be criminals to plan and execute the crime of murder for hire", defendants have not so stipulated in this litigation. Nonetheless, I agree fully with the *Rice* court's conclusion that:

> Wholly apart from Paladin's stipulations, there are four bases upon which, collectively, if perhaps, not individually, a reasonable jury could find that Paladin possessed the intent required [to be liable as an aider and abettor] as well as the intent required under any heightened First Amendment standard.

128 F.3d at 252. The four bases listed in *Rice* were: (1) the declared purpose of *Hit Man* itself was to facilitate murder; (2) the book's extensive, decided, and pointed promotion of murder was highly probative of the publisher's intent; (3) Paladin's marketing strategy, which focused on attracting and assisting criminals and would-be criminals, supported a finding of the requisite intent; and (4) a jury could reasonably conclude that Paladin had the requisite intent to assist in the homicides by finding that *Hit Man's* only genuine use was the unlawful one of facilitating murders. To these four, I would add at least one other: despite its knowledge of the facilitating role *Hit Man* played in the *Rice* murders, Paladin continued to promote and sell its how-to murder manual as before, thus assisting Rob Jones in his endeavor to become a successful killer for hire.

As did the *Rice* court, I find this case to be closely analogous to, and thus controlled by, the Ninth Circuit precedent of *United States v. Barnett*, 667 F.2d 835 (9th Cir.1982). In *Barnett* the issue was whether one could be liable as an aider and abettor for selling a formula for the manufacture of PCP and certain "how-to" instructions to a person who thereafter used the instructions to manufacture the drug. The transaction was done by mail; the would-be criminal paid ten dollars for the instructions; the instruction/formula seller and the purchaser did not otherwise know or have any dealings with each other. The *Barnett* court had little difficulty rejecting the defendant's First Amendment defense to an aiding and abetting charge, holding that:

> The First Amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose. Crimes, including that of aiding and abetting, frequently involve the use of speech as part of the criminal transaction.

667 F.2d at 842.

Based on the reasoning of *Rice* and the holding of *Barnett*, I conclude that the First Amendment does not preclude the prosecution of plaintiffs' civil claims against defendants for aiding and abetting and conspiracy in connection with the assault on Wilson and her son.

■ Plaintiffs' two other claims necessitate a different analysis. They also seek to recover on a strict product liability theory, claiming that *Hit Man* was a defective and unreasonably dangerous product that caused plaintiffs' injuries, as well as a negligence theory, contending that defendants were careless in publishing *Hit Man* in that the manual created an unreasonable and foreseeable risk of harm.

■ Unlike the aiding and abetting and conspiracy claims, which focus on Jones' criminal act and the intent of defendants in facilitating or assisting in that act through the sale of their instructional manual, the focus of the latter two claims is solely on the content of the manual itself. These claims clearly implicate the seminal case of

*Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), which held that speech that teaches or advocates lawless conduct is protected under the First Amendment unless the speech is both directed at inciting, and is likely to incite, imminent lawless action. *Barnett* did not undertake a *Brandenburg* analysis, because the issue there was whether prosecution for aiding and abetting a criminal act, where the act was distinct from the speech which allegedly induced or counseled the commission of the crime, was barred by the First Amendment. For the *Barnett* scenario to have invoked *Brandenburg,* the facts would need to be massaged and the hypothetical presented that the prosecution be for the act of selling the formula and instructions regardless of whether there was proof that anyone used the material to make PCP. Indeed, in *Barnett* the court noted that the defendant therein had sold the manufacturing instructions to an undercover agent, but that he could *not* be liable as an aider and abettor for that transaction as no crime was committed by the agent.

Thus *Barnett* and *Rice* (which also involved only an aiding and abetting claim) are not of assistance to plaintiffs on their product liability and negligence claims where, to repeat, the focus is on the speech itself, not its alleged role in facilitating the commission of a separate criminal act.

Although plaintiffs contend that the evidence in the case is sufficient to survive *Brandenburg* scrutiny, it appears to the court, after an extensive colloquy with plaintiffs' counsel on the subject at oral argument, that the primary evidence plaintiffs rely upon is that of defendants' *intent* to facilitate the commission of the criminal act. Thus the product liability and negligence claims appear to be swallowed by and add nothing to the aiding and abetting and conspiracy claims. It would be an academic exercise to undertake a *Brandenburg* analysis, focused exclusively on *Hit Man's* content, when, after all is said and done, we find ourselves back at Jones' use of the manual to commit assault and battery and defendants' intent to assist him in that act. Accordingly, plaintiffs' product liability and negligence claims are dismissed.

## II. *Defendant Lund's Motion to Dismiss*

▪ Defendant Lund has made numerous personal contacts with the state of Oregon over the years, often visiting a personal friend who wrote several books for Paladin Enterprises. He has purchased real property here (which he later sold to Paladin Enterprises), initiated a lawsuit in the Oregon state courts (*Lund v. Moore,* Douglas County Circuit Court, Case # 94–CV–0734 (1994)),[3] and even signed a general power of attorney in December 1980 authorizing a local attorney, Stephen H. Miller, to act as his agent and representative in the state.[4] Although the

---

3. The court notes the irony that defendant Lund has himself filed suit in Oregon seeking judicial relief yet asserts that he is immune as a defendant from the court's jurisdiction.

4. Although defendant Lund characterizes the power of attorney as being "for the limited purpose of purchasing property in Oregon" (Reply to Supplemental Opposition to Defendant Lund's Motion to Dismiss (#60) at 3), nothing in the document itself suggests such a limitation. Rather, the powers granted are

quite broad, including, *inter alia,* the power "to bargain, contract, agree for, purchase, receive, and take lands", to "transact all and every kind of business of whatsoever kind or nature", and "to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could if personally present". Although apparently never revoked, it is doubtful that the power of attorney remains valid twenty years after it was authorized. Nonetheless, it is a

court recognizes that the standard for asserting general jurisdiction is "fairly high," surely defendant Lund's contacts with the state—multiple personal visits, real property transactions, and designation of a personal representative—are sufficient to satisfy it.

Because the court can assert personal jurisdiction over defendant Lund, the parties' arguments over the applicability of the fiduciary shield doctrine and whether Paladin Enterprises is the "alter ego" of defendant Lund are unnecessary. However, the court does note that equitable defenses to jurisdiction such as the fiduciary shield doctrine could easily be found to be improperly invoked here, where defendant is the president, sole director, and 90 percent shareholder in the applicable corporation.[5] Further, although it is not necessary to the court's decision here, there is substantial evidence that Paladin Enterprises could be seen as the "alter ego" of defendant Lund, thus establishing jurisdiction over him even if general jurisdiction could not be asserted.

Finally, the court notes the inherent reasonableness of asserting jurisdiction over defendant Lund, such that it is not a denial of "fair play and substantial justice." *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852 n. 2 (9th Cir. 1993). Although he downplays the importance of his role at Paladin, he is the President and sole Board member, and by definition of those positions is in charge of Paladin operations. He will be involved *de facto* in the lawsuit whether he is a named party or not, and his continuing contacts with the state in a personal and professional capacity suggest it is not an undue hardship to require him to remain so involved. Further, the important decisions related to the events leading to this lawsuit—solicitation, publication and advertisement of publications such as *Hit Man*—as well as decisions on issues of Paladin's liability insurance and capitalization of the corporation were made by defendant Lund. Frankly, if plaintiffs obtain a judgment in this case and, due to defendant Lund's decisions, are unable to recover the full amount from Paladin, it may well be reasonable to allow them to turn to defendant Lund.[6] Because it is not unreasonable to require defendant Lund to remain a party in the lawsuit, and be subject to potential liability in it, asserting general jurisdiction over him does not violate traditional notions of fair play and substantial justice.

Defendant Lund's motion (# 19) to dismiss him from this suit on grounds of personal jurisdiction is denied.

### CONCLUSION

For the above reasons, defendant Lund's motion (# 19) to dismiss is denied. Plaintiff's motion (# 66) to file a supplemental reply to defendants motion to dismiss is denied as moot. Defendants' motion (# 47) for summary judgment is denied in part and granted in part. The motion is denied as it relates

---

powerful piece of evidence that defendant Lund (himself, not on behalf of Paladin Enterprises) has had substantial contacts with the state.

5. Were the court examining the applicability of an equitable defense in favor of defendant Lund, the court would also view critically defendant Lund's initial sworn affidavits denying any contacts with the state of Oregon (later—after some discovery by plaintiffs—

supplemented with an affidavit acknowledging the above-listed, and substantial, contacts).

6. Although this is very similar to the arguments in favor of the "alter ego" doctrine, it is important to note that the court is merely examining the reasonableness of asserting jurisdiction and makes no finding as to whether Paladin is the "alter ego" of Lund.

to claims 1, 2, 5 and 6 (relating to assault and battery) and granted as it relates to claims 3, 4, 7 and 8 (relating to product liability and negligence). Claims 3, 4, 7 and 8 are hereby dismissed.