UNITED STATES of America,
Plaintiff—Appellee,

v.

Raymond Andre JOHNSON,
Defendant—Appellant.

United States of America,
Plaintiff—Appellee,

v.

Michael Sallis, Defendant—Appellant.

United States of America,
Plaintiff—Appellee,

v.

Mark Allen McMillion, Defendant—
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Anthony Jerome Thompson,
Defendant–Appellant.

Nos. 00–30359, 00–30410,
01–30025, 01–30232.
D.C. No. CR–99–00112–BLG–JDS.

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 7, 2002.

Resubmitted May 24, 2002.

Decided June 14, 2002.

As Amended on Rehearing Aug. 30, 2002.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Before THOMAS, GRABER, and GOULD, Circuit Judges.

## MEMORANDUM *

Defendants were charged,[1] singly or in groups, in a sixteen-count information with one count of conspiracy, 18 U.S.C. § 371; five counts of attempting to persuade, entice, or coerce another to participate in interstate travel for the purpose of prostitution, 18 U.S.C. § 2422(a); four counts of successful persuasion, enticement, or coercion, 18 U.S.C. § 2422(a); three counts of transporting a minor in interstate commerce for the purpose of prostitution, 18 U.S.C. § 2423(a); two counts of transporting a person in interstate commerce for the purpose of prostitution, 18 U.S.C. § 2421; and one count of violating the Travel Act, 18 U.S.C. § 1952.[2] The prosecution requested a *Pinkerton* instruction,[3] which was given. The jury convicted Defendants on all counts.

First, we address the arguments that apply to all four Defendants. Second, we respond to the individual challenges to Defendants' respective convictions. Third, we turn to the alleged sentencing errors.

### A. *Common Issues*

#### 1. *Conspiracy*

██ Defendants challenged the sufficiency of the evidence underlying their conspiracy conviction. Reviewing for plain error, we conclude that the conviction must be reversed because the jury could

---

1. Defendants were charged by indictment and then, after waiving their right to indictment, in a superseding information. On appeal, defendant Thompson has a filed a pro se supplemental brief positing that the superseding information violated his right to be charged by indictment. However, he made a knowing and voluntary waiver of his right to be charged by indictment.

2. *See* Appendix.

3. *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

have convicted on a legally inadequate ground. *United States v. Fuchs*, 218 F.3d 957, 961 (9th Cir.2000).

"Under 18 U.S.C. § 371, a single charge of conspiracy can have multiple objects, but each object alleged must constitute a federal offense." *United States v. Manarite*, 44 F.3d 1407, 1414 & n. 7 (9th Cir. 1995). "[A] federal conspiracy *conviction* could not be upheld when non-federal offenses as well as federal offenses were submitted to the jury as objects of the conspiracy, and it was impossible to determine on which basis the jury convicted." *United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir.1997). In fact, a conspiracy conviction is "doom[ed]" if the indictment alleges both legally sufficient and legally insufficient objects and there is "no way to know which objects the jury relied on in its decision to convict [the defendants] of conspiracy." *Manarite*, 44 F.3d at 1413–14.

That is exactly what happened here. The information charged that Defendants conspired to violate three federal statutes. However, it then listed the conspiracy's four "objects and purposes." In supplemental briefing, which we requested, the government conceded–and we agree–that object number three, "[t]o obtain the proceeds of prostitution from females the defendants had recruited to work as prostitutes," is not a federal offense.

The jury returned general verdict forms. We cannot determine which "object" of the conspiracy the jury relied on in reaching its verdict. Because the jury could have relied on object number three, the conspiracy conviction is legally unsupportable. *See Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (stating that "we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which

ground the jury selected"), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Finding an error does not end our inquiry. Defendants did not object to this error at trial, nor did they argue it in their briefs to this court. Therefore, we can reverse only if this mistake constituted "plain error." *See United States v. Portillo–Mendoza*, 273 F.3d 1224, 1227 (9th Cir. 2001) (defining plain error).

We already have explained that submitting a legally unsupportable theory to the jury was error. We conclude that the error was plain. The law in this area was settled at the time of trial by established Supreme Court precedent. *Yates*, 354 U.S. at 312, 77 S.Ct. 1064; *Fuchs*, 218 F.3d at 962 & n. 1. Further, the error prejudiced Defendants' substantial rights because it appears to have affected the outcome of the proceedings, which relied heavily on Defendants' concerted activities within Montana. *See United States v. Olano*, 62 F.3d 1180, 1188 (9th Cir.1995) (stating standard). Finally, we hold that the real possibility that Defendants were convicted for acts that are not federal crimes is grounds for us to exercise our discretion to reverse for plain error. *See id.* at 1187.

Because the conspiracy conviction may have rested on a legally insufficient ground, we reverse the conviction of all Defendants on count one. We next reach the question of the sufficiency of the evidence on this count, because our decision on that issue will affect whether Defendants may be retried. *United States v. Dipentino*, 242 F.3d 1090, 1096 (9th Cir. 2001). After reviewing the record, we hold that the evidence was insufficient to support a conviction under 18 U.S.C. § 371. Therefore, the government may not retry Defendants on count one. *Richardson v.*

*United States,* 468 U.S. 317, 323–24, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

### 2. Pinkerton *Liability*

Because we reverse the conspiracy conviction, those counts that rested solely on *Pinkerton* liability must be reversed. However, as an alternative to *Pinkerton* liability, the district court gave instructions on aider and abettor liability. Under *Olano,* we "need not reverse if we find beyond a reasonable doubt that the jury would have convicted [the defendants] of each substantive count as aiders and abettors or as principals, and did not rely on *Pinkerton.*" 62 F.3d at 1199 (citation and internal quotation marks omitted). However, not all Defendants were named on all counts in this case. The superseding information included a general *Pinkerton* charge against all Defendants, but no general aiding and abetting charge. A defendant cannot be convicted of a crime with which he or she has not been charged. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (describing general rule that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"). Accordingly, in this case we can affirm a conviction under this rule only if the defendant was named in that count.

We reverse and affirm as set out in the chart below.[4] We affirm only those counts in which Defendants were named and for which we conclude, beyond a reasonable doubt, that the jury would have found Defendants guilty without the *Pinkerton* instruction.[5] In other words, we affirm those counts for which the jury undoubtedly would have convicted the defendant as a principal or as an aider or abettor without a *Pinkerton* instruction. *Olano,* 62 F.3d at 1199.

| Defendant | Disposition |
| --- | --- |
| Raymond Johnson | Reverse all counts. Count 12 reversed for insufficiency of evidence. |
| Michael Sallis | Reverse counts 1, 2, 3, 5, 9, 10, 11, 12, 13, 18, 19. Affirm counts 16, 17, 20, 21. |
| Mark McMillion | Reverse counts 1, 2, 3, 5, 9, 16, 17, 18, 19, 20, 21. Affirm counts 10, 11, 12, 13, 22. |
| Anthony Thompson | Reverse counts 1, 2, 3, 10, 11, 12, 13, 16, 17, 20, 21 Affirm counts 5 and 22. |

### 3. *The Expert Testimony*

■ Reviewing for abuse of discretion, *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), we conclude that the district court did not err by admitting expert testimony on the relationship between pimps and their prostitutes. *See United States v. Taylor,* 239 F.3d 994, 998 (9th Cir.2001) (concluding that it was not an abuse of discretion to

4. The government concedes, and we agree, that the convictions on counts 9, 18, and 19 must be reversed for all Defendants because those counts were supported by conduct that was not yet criminal at the time it was committed. Specifically, those counts were for "attempts" to violate § 2422(a). Attempt did not become criminal under that statute until October of 1998, but the conduct underlying counts 9, 18, and 19 took place before October of 1998. As to Thompson, these counts were already vacated at his sentencing hearing.

5. This conclusion is subject to our review of the sufficiency of the evidence.

admit similar expert testimony for the same purpose). The expert also did not impermissibly vouch for the government's witnesses. *See United States v. Kearns,* 61 F.3d 1422, 1427 (9th Cir.1995). We need not reach the question whether the district court should have conducted a *Daubert* hearing prior to admitting the testimony, because none of the Defendants preserved that issue for appeal.

#### 4. The "Other Acts" Evidence

We review for abuse of discretion the district court's admission of "other acts" evidence. *United States v. Palmer,* 3 F.3d 300, 303–04 (9th Cir.1993).

##### (a) *Inadequacy of Notice to Present Rule 404(b) Evidence*

The notice requirement of Federal Rule of Evidence 404(b) is not stringent. The notice may be general. *See* Fed.R.Evid. 404(b) advisory committee's note, 1991 amends. (stating purpose of requirement is to "reduce surprise and promote early resolution on the issue of admissibility").

Here, the notice requirement was satisfied. The government provided several pretrial notices of their intention to introduce Rule 404(b) evidence. Defendants responded with motions in limine, and the court ruled before trial that the evidence was admissible. The intended function of the notice requirement was served.

##### (b) *Admissibility of the "Other Acts" Evidence*

■ We apply a four-part test to gauge the admissibility of "other acts" evidence under Rule 404(b). *United States v. Chea,* 231 F.3d 531, 534 (9th Cir.2000). The district court did not err. Evidence of other acts of pimping, even violent acts, are properly admitted in Mann Act prosecutions to demonstrate modus operandi, motive, and intent. *United States v. Win-*

*ters,* 729 F.2d 602, 604 (9th Cir.1984). Further, the district court permissibly concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The district court sua sponte instructed the jury several times that it was to consider such evidence for a limited purpose and it limited exceptionally prejudicial testimony.

In sum, although the evidence of other acts was considerable, it was not an abuse of discretion to admit it.

#### 5. Ineffective Assistance of Counsel

"A challenge to a conviction based upon ineffective assistance of counsel ordinarily is made through collateral attack, not on direct appeal...." *United States v. Cochrane,* 985 F.2d 1027, 1029 (9th Cir.1993) (per curiam). This case does not present the kind of exceptional circumstances under which we would reach the claim on direct appeal. *See United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000) (stating exceptions). We therefore decline to reach this issue.

### B. Individual Arguments

#### 1. Sufficiency Challenges

Defendants allege that the evidence was insufficient to convict them of several of the substantive counts. Johnson argues that the evidence was insufficient to support the verdict against him on counts 10 and 12. McMillion and Sallis allege that the evidence was insufficient to support the verdict against them on counts 11 and 22. Thompson contends that the evidence does not support a conviction on counts 5, 10, 12, and 22. We have reversed some of these convictions because the facts of the case indicate no possibility at all of aiding and abetting liability. Therefore, we consider Defendants' challenges only as to the counts that remain: count 12 as to John-

son, counts 11 and 22 as to McMillion, and counts 5 and 22 as to Thompson.

On count 12 for Johnson, the evidence, viewed in the light most favorable to the government, showed that McMillion, in Billings, called Johnson, in Seattle, and Johnson told McMillion that "it would be a good [prostitution] business up there [in Seattle}." McMillion later drove juvenile R.D. to Seattle. "To be guilty of aiding and abetting another person, it is necessary that the defendant in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Vasquez–Chen,* 978 F.2d 546, 552–53 (9th Cir.1992) (internal quotation marks omitted). This evidence is not sufficient to prove that Johnson aided and abetted in the transportation of R.D. from Montana to Seattle with the intent that R.D. engage in prostitution. Johnson gave no specific counsel or direction about how to engage in prostitution in Seattle. It cannot fairly be said that Johnson provided any particular information about how McMillion might operate with a prostitute in Seattle. From the record, we can only conclude that McMillion knew how to be a pimp with a prostitute, and the statement by Johnson about prostitution being a good business in Seattle is not the type of counsel or encouragement that, without more, can create criminal liability.

As to McMillion and Thompson, viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to permit a rational fact-finder to conclude beyond a reasonable doubt that Defendants were guilty on those counts.

### 2. *McMillion, Sallis, and Thompson: The Selective Prosecution Rulings*

In order to obtain discovery in support of a theory of selective prosecution, a de-

fendant must make a "credible showing of different treatment of similarly situated persons." *United States v. Armstrong,* 517 U.S. 456, 470, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). After a hearing, the district court determined that Defendants had failed to make such a showing. After reviewing the evidence, we hold that the district court did not abuse its discretion in preventing Defendants from seeking discovery on a selective prosecution theory.

Before trial, the court issued an order barring evidence of selective prosecution. Defendants allege that in so doing, the district court denied them their rights under the Confrontation Clause by "prohibiting them from mentioning or examining any witness on the issue of racial prejudice." The court's order did not bar cross-examination as to racial bias. The order does not say that Defendants could not question witnesses about whether the witnesses had a bias against a particular race. Thus the premise of this argument is incorrect, and no violation of Defendants' confrontation rights is shown.

### 3. *McMillion: The Motion to Suppress Evidence From the Stop of McMillion's Car*

McMillion argues that the district court erred when it denied a motion to suppress evidence from an automobile stop in July of 1999. From this stop, officers learned the identity of victim M.D., who later told officers that McMillion and Thompson had attempted to recruit her as a prostitute.

■ The stop was supported by reasonable suspicion. The officers had an objectively reasonable belief that criminal activity was afoot based on their surveillance of McMillion's car. The officers saw someone who looked very young, accompanied by a known prostitute, get into a car driven by a suspected pimp. Those facts provided reason to suspect the pimp of

transporting a minor for the purpose of prostitution. Therefore, the motion to suppress was properly denied.

### C. Sentencing Issues

1. *McMillion and Sallis: Erroneous Statutory Maximums Applied to Counts 2, 3, 10, 11, and 12*

The October 1998 amendments to the Mann Act increased the applicable statutory maximums. The amendments also provided for an increase in the statutory maximum for offenders who had been previously convicted of a sex offense. 18 U.S.C. § 2426. The maximums applicable to pre-October 1998 and post-October 1998 conduct are set out below. The enhanced recidivism increase for prior sex offenses, applicable here to defendant Sallis, is the number in parentheses in the third column.

| Provision | Statutory Maximum Before October 1998 | Statutory Maximum After October 1998 |
| --- | --- | --- |
| 18 U.S.C. § 2422(a) | 60 months | 120 months (240 months) |
| 18 U.S.C. § 2421 | 60 months | 120 months (240 months) |
| 18 U.S.C. § 2423(a) | 120 months | 180 months (360 months) |

The district court sentenced McMillion and Sallis under the *amended* maximums.[6] The government concedes that this was error, and we agree. Counts 2, 3, 10, 11, and 12 covered conduct that took place before October 1998. *See* Appendix. We have already reversed several of these counts because of the conspiracy issues. Those that remain are McMillion's convictions on counts 10, 11, and 12.

Count 12 is based on 18 U.S.C. § 2423(a), which as indicated had an applicable statutory maximum of 120 months. McMillion, however, received a sentence of

120 months on counts 10 and 11, and 180 months on count 12, all of which are over the statutory maximums. We reverse and remand these three counts as to McMillion for resentencing under the pre-amendment statutory maximums.

2. *McMillion, Thompson, and Sallis: The U.S.S.G. § 3A1.1 Enhancement for Vulnerable Victims*

The district court erred in imposing a vulnerable-victim enhancement for two of the victims in this case, R.K. and R.D. *See United States v. Castaneda,* 239 F.3d 978, 981 (9th Cir.2001) (holding that in order for the vulnerable-victim enhancement to apply to Mann Act offenses, the victim must be vulnerable to a degree beyond that already contemplated by the offense). An enhancement for victim vulnerability still would be appropriate if the district court makes a finding of unique vulnerability in the particular circumstances. *United States v. Williams,* 291 F.3d 1180, 1195 (9th Cir.2002).

R.K. and R.D. were the victims of the following counts: 2, 3, 5, 9, 10, 12, and 13. We have affirmed McMillion's convictions on counts 10, 12, and 13 and Thompson's conviction on count 5. The other counts have been reversed as to all three Defendants who raise this issue. As for McMillion, we reverse and remand for resentencing on counts 10, 12, and 13, the remaining counts that pertain to R.D. As for Thompson, we reverse and remand for resentencing on count 5, the remaining count involving R.K.

3. *Sallis and McMillion: The Upward Departures*

The district court departed upward in sentencing Sallis and McMillion. The court departed upward seven levels in sen-

---

**6.** The government recognized its error before Thompson was sentenced.

tencing McMillion. Sallis' departure was achieved by imposing a consecutive sentence for the conspiracy count. We affirm the departure in McMillion's case.

### (a) McMillion

The district court departed upward seven levels to take into account McMillion's extreme conduct. *See* U.S.S.G. § 5K2.8. This departure is supported by the record and is reasonable. The victims testified that McMillion engaged in exactly the kind of extreme "degrading" and "humiliat[ing]" conduct that U.S.S.G. § 5K2.8 contemplates would warrant a departure.

### (b) Sallis

Sallis' argument is no longer relevant because we have reversed the conspiracy count, and thus necessarily he will no longer serve a sentence on that count that is consecutive to his sentences on the other counts. Should the district court consider a departure on remand, it should follow the notice requirements set forth in *Williams*.

### CONCLUSION

As for defendant Johnson, we REVERSE his convictions on all counts.

As for defendant Sallis, we REVERSE his convictions on counts 1, 2, 3, 5, 9, 10, 11, 12, 13, 18, and 19. We AFFIRM on counts 16, 17, 20, and 21. We REVERSE and REMAND for resentencing so that the sentence on these counts will not be affected by grouping provisions relating to the reversed counts.

As for defendant McMillion, we REVERSE his convictions on counts 1, 2, 3, 5, 9, 16, 17, 18, 19, 20, and 21. We AFFIRM on counts 10, 11, 12, 13, and 22. We REVERSE and REMAND for resentencing so that the sentence on these counts will not be affected by grouping provisions relating to the reversed counts. We also REMAND for resentencing because the district court applied the wrong statutory maximum to counts 10, 11, and 12. We also REMAND for resentencing on the vulnerable-victim enhancement in the light of *Williams*.

As for defendant Thompson, we REVERSE his convictions on counts 1, 2, 3, 10, 11, 12, 13, 16, 17, 20, and 21 and AFFIRM on counts 5 and 22. We REVERSE and REMAND for resentencing so that the sentence on these counts will not be affected by grouping provisions relating to the reversed counts. We also REMAND for resentencing on count 5 for the purpose of reconsidering the vulnerable-victim enhancement in the light of *Williams*.

APPENDIX[7]

| Count (18 U.S.C.) | Date | Conduct Charged | Victim | Disposition |
| --- | --- | --- | --- | --- |
| 1— § 371 | Before Dec. 1994 to after Aug. 1999 | Conspiracy | N/A | Reversed. |
| 2— § 2422(a) | March, April 1998 | Persuasion, etc. | R.K. | Reversed. |
| 3— § 2423 | March, April 1998 | Transport of minor | R.K. | Reversed. |
| 5— § 2422(a) | July 1999 | Attempt[8] to persuade, etc. | R.K. | Affirmed as to Thompson. |

7. Defendants originally were charged in a 23–count information. The government dismissed counts 4, 6, 7, 8, 14, 15, and 23 with prejudice just before trial. This Appendix details the remaining counts.

8. Because this conduct took place in July 1999, there is no ex post facto problem. Attempt became criminal in October 1998.

| | | | | Reversed as to all others. |
|---|---|---|---|---|
| 9— § 2422(a) | Before August 1998 | Attempt to persuade, etc. | R.D. | Reversed. |
| 10— § 2422(a) | August 1998 | Persuasion, etc. | R.D. | Affirmed as to McMillion. Reversed as to all others. |
| 11— § 2421 | August 1998 | Transport | R.P. | Affirmed as to McMillion. Reversed as to all others. |
| 12— § 2423(a) | August 1998 | Transport of minor | R.D. | Affirmed as to McMillion. Reversed as to all others. |
| 13— § 1952 | August 1998 | Crime of violence to further unlawful activity | R.D. | Affirmed as to McMillion, Reversed as to all others. |
| 16— § 2422(a) | January 1999 | Persuasion, etc. | K.M. | Affirmed as to Sallis. Reversed as to all others. |
| 17— § 2421 | January 1999 | Transport | K.M. | Affirmed as to Sallis. Reversed as to all others. |
| 18— § 2422(a) | Summer of 1998 | Attempt to persuade, etc. | T.D. | Reversed. |
| 19— § 2422(a) | Summer of 1998 | Attempt to persuade, etc. | N.L. | Reversed. |
| 20— § 2422(a) | Winter of 1999 | Persuasion, etc. | L.B. | Affirmed as to Sallis. Reversed as to all others. |
| 21— § 2423(a) | Winter of 1999 | Transport of minor | L.B. | Affirmed as to Sallis. Reversed as to all others. |
| 22— § 2422(a) | July 7, 1999 | Attempt to persuade, etc. | M.D. | Affirmed as to Thompson and McMillion. Reversed as to all others. |

GOULD, Circuit Judge, concurring.

I concur. As we reverse conspiracy convictions because non-federal offenses were included as objects of the alleged conspiracy, I write to add the view that the evidence was insufficient to establish conspiracy even if all objects submitted to the jury had been federal crimes. The federal conspiracy laws are essential in the fight against the most organized and serious crimes and criminal enterprises. The conspiracy laws should not be watered down by misapplication to routine, individual crimes.

Defendants pimped, shared common interests, exchanged malign ideas, ate at Denny's, hung out together, and sometimes loaned money to one another in hard times. Defendants' individual crimes in promoting prostitution are despicable, and the government may prosecute each defendant to the fullest extent possible for each

defendant's individual crimes. But proof of individual crimes and friendship among rogues and criminals is not the stuff of which a federal conspiracy charge is made.

In this case there was no agreement of the defendant pimps to share receipts of the illicit work of prostitutes; there was no agreement to pool expenses for any expenditures of common interest; there was nothing in the nature of a partnership or joint venture; the case does not fit within traditional conspiracy concepts. Pimping is a crime, and a federal crime when interstate elements are shown; but friendship among pimps does not constitute the federal crime of conspiracy that would render each pimp liable for the federal crimes of all.

Birds of a feather may flock together, but that does not show they conspire.

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur in the resolution of all issues except as to Defendant Johnson's conviction on Count 12. In my view the evidence plainly supported his conviction on that count, notwithstanding the reversal on the conspiracy count. In this regard, the majority impermissibly second-guesses the jury and fails to follow our most closely analogous precedent.

Count 12 charged that, in or about August 1998, the defendants (including Johnson) "knowingly transported, or did aid and abet in the transportation of R.D. ..., an individual under the age of 18, in interstate commerce from the District of Montana to Seattle, Washington, ... with the intent that such individual engage in prostitution." The court gave proper instructions to define the elements of aiding and abetting. The evidence proved beyond a reasonable doubt—and thus the jury was entitled to find—that Johnson was guilty of Count 12 as an aider and abettor.

Title 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States *or* aids, abets, *counsels*, commands, induces or procures its commission, is punishable as a principal." (Emphasis added.) Encouragement to commit a federal crime suffices to hold the encourager criminally liable as an aider and abettor if the person doing the encouraging has the specific intent to facilitate the commission of the crime and the crime is, in fact, committed. We have held that proof of direct encouragement can suffice. *United States v. Bancalari*, 110 F.3d 1425, 1429–30 (9th Cir.1997). In *United States v. Barnett*, 667 F.2d 835, 841–42 (9th Cir. 1982), we held that

> encouraging and counseling another by providing specific information as to how to commit a complex crime does not alone constitute aiding and abetting. If, however, the person so assisted or incited, commits the crime he was encouraged to perpetrate, his conselor is guilty of aiding and abetting.

In *United States v. Ritter*, 989 F.2d 318, 322 (9th Cir.1993), we held that evidence of encouragement—extremely similar to what we have in this case—sufficed to sustain a conviction for aiding and abetting the making of an unregistered pipe bomb. In *Ritter*, the defendant had a conversation with two other men, in which he said that he would like to see another person "go up in flames." *Id.* Participation in that conversation was enough to sustain aiding and abetting liability for the manufacture of a pipe bomb intended for that purpose. The majority does not, and cannot fairly, distinguish *Ritter*.

*Barnett* referred to counseling the commissioin of a "complex crime." 667 F.2d at 841. Nothing in that opinion or in the logic of aider and abettor liability suggests, however, that providing guidance on how

to commit an uncomplicated crime, followed by commission of that crime, would yield a different result. ("I've been thinking of robbing someone. Got any advice?" "Sure. A big truck just delivered money to the bank across the street.")

In this case, R.D. testified that Defendants Johnson and Thompson were part of the group that recruited her to become a prostitute for Defendant McMillion. McMillion sought specific advice from Johnson about where would be the most lucrative place to transport a specific minor prostitute, R.D. Johnson advised McMillion that an out-of-state location, specifically Seattle, likely would be the most lucrative place to pimp R.D. Considering this piece of evidence *in context*, one easily and reasonably could infer that Johnson had the specific intent that his advice would be acted on. Finally, McMillion indeed acted on Johnson's advice and took R.D. from Montana to Seattle, where he pimped her. Under established Ninth Circuit precedent, Johnson's encouragement was sufficient participation to sustain aider and abettor liability for McMillion's interstate transport of R.D. No other evidence in the case casts doubt on these facts; if anything, the presence of other charges might have helped Johnson by making the foregoing acts seem less egregious.

For these reasons, I dissent from the majority's reversal of Johnson's conviction on Count 12.